## PELZEL v. SCHEPP.

(Supreme Court, Appellate Division, First Department. May 22, 1903.)

1 NEGLIGENCE—QUESTION FOR JURY.

Where plaintiff, who was employed by a plumber, who was employed by defendant to repair certain plumbing, was working on the plumbing in an elevator shaft in defendant's building, and was told by defendant that the elevator would not be run while he was at work, but the elevator was operated and plaintiff was injured by his foot being crushed by a descending counterweight, the question whether defendant was guilty of negligence was for the jury, and it was error to charge that it was negligence as a matter of law.

Patterson, J., dissenting.

Appeal from Trial Term, New York County.

Action by August Pelzel against Leopold Schepp. From a judgment for plaintiff, and from an order denying a motion for a new trial, defendant appeals. Reversed.

Argued before McLAUGHLIN, PATTERSON, O'BRIEN, INGRAHAM, and LAUGHLIN, JJ.

H. Snowden Marshall, for appellant.
Levin L. Brown, for respondent.

INGRAHAM, J. The plaintiff was in the employ of one Bader, who was employed by defendant to repair the plumbing in a building in his possession. As a part of this work, it was necessary to put a pipe through an elevator shaft at one of the upper floors of the building. On November 17, 1899, while this work was being done, the elevator was operated below the story at which the plaintiff was at work, and as the elevator ascended the counterweights descended, crushing the plaintiff's leg.

To do this work it was necessary to construct a platform inside the elevator shaft. For this purpose panels were used to cover the shaft, upon which the plaintiff was instructed by Bader to work. The plaintiff and his fellow laborer went to work; tore out the old pipe preparatory to putting in the new pipe. The plaintiff testified that while he was at work the defendant came and told him to stop working, as it was necessary to use the elevator. The men stopped, the boards were taken off, and the plaintiff went upon a fire escape to make a fire to melt the solder to be used in replacing the pipe. In about half an hour the defendant came to the plaintiff and said, "Now, you can recommence again to work; the elevator will not come any more."

The men then replaced the plank across this elevator shaft, and resumed their work. While thus engaged, the plaintiff heard an outcry, and turned around to see what was the matter, when the counterweight in the elevator shaft descended and caught his right foot, crushing it so that it had to be amputated. The man in charge of the elevator testified that he was present when the plaintiff came to work; that he refused to allow him in the elevator shaft as the elevator was running; that at about half past 10 the defendant came and was told by the witness that two tinsmiths had got there about 8 o'clock and wanted to go to work, but that he (the witness) had refused to allow them to work, because it was dangerous and not a fit place for them to work while the elevator was running; to which the defendant said, "Take me up. I will explain it to you—show how it can be done;" that when the defendant and the witness got to the floor the witness explained the situation; told the defendant that when the car was in the basement his counterweights were overhead, and that when the elevator was at the store the weights would then be seen with the floor at which plaintiff was to work; that the defendant then told the witness to go ahead and run the car, but not to go up to the ninth floor, at which these men were at work, but to run the car from the eighth floor all the way down; that, some time after, the witness was instructed by the defendant to load the elevator and to take the load to the fourth floor; that he took this load to the fourth floor and took off the load, when he was instructed to get a bag; that he went down, put the bag upon the elevator, and started up again; that as the elevator was ascending he felt a jar through the car; that the defendant had told the witness that he would watch at the ninth floor, and take care of the men where they were at work; that the witness then saw the defendant, who said: "That man is hurt. Why didn't we do as you said?" The plaintiff also testified that no one cautioned him about these counterweights.

On behalf of the defendant, the plaintiff's employer, Bader, testified that he was doing the work for the defendant; that there was a leader running across the back of the elevator shaft at the ninth floor, and that he was repairing this leader; that the plaintiff took the old leader out; that the defendant was there, and it was at his suggestion that these planks were placed across the elevator shaft for the men to work on; that while the men were at work the elevator was operating on the lower floors; that he told the plaintiff that this was a dangerous job, but did not call his special attention to the counterweights; that while the elevator was in operation the weights moved up and down, and that he then warned the plaintiff to look out for them; that the defendant was not upon the floor when the accident happened; that the defendant did not warn either the witness or the plaintiff about these counterweights, and at the time of the accident the witness was working opposite the elevator, behind the wall, soldering the pipes there, and in the position that he was in he could not see the plaintiff. The defendant then testified that he had a talk with Bader, but had no talk with the plaintiff; that he was down at the office at the time of the accident, having been upon the ninth floor but three or four minutes when he first got to the store; that he told Bader not to allow

the men to work where there was any danger, and that he sent the planks up to enable them to do the work; that he thought it was safe to run the elevator on the lower floors while the men were working on the ninth floor; that he did not think of the danger of the counterweights at the time, and gave no instructions about the running of the elevator.

The court, in charging the jury, predicated the plaintiff's right to recover upon the jury's believing—

"That the defendant informed him [plaintiff], as he was about resuming work in the elevator shaft upon the ninth floor, that the elevator would not be run while he was so at work; and that, notwithstanding such information, the elevator was run, and that in consequence thereof the plaintiff lost his leg. * * * If you believe that the defendant informed the plaintiff that the elevator would not be run while he was working in the shaft, then the plaintiff had a right to rely thereon; and, if the defendant did run the elevator so as to cause the injury complained of, the defendant was guilty of negligence. If, on the other hand, you do not believe that the defendant informed the plaintiff that the elevator would not be so run, then the only duty owed to the plaintiff under such circumstances was that of ordinary care while the plaintiff was so doing work in the elevator shaft. In that event, you will consider and determine from the evidence whether or not the defendant did exercise such care. If you believe that the defendant did exercise such care, you will find in his favor. On the other hand, if you find that he did not, you will decide whether or not the plaintiff was guilty of contributory negligence."

The defendant specifically excepted to the charge "that, if the jury believes that the defendant informed the plaintiff that the elevator would not be run, then the plaintiff had a right to rely upon such information; and, if the defendant did run the elevator, he was guilty of negligence"; and it is this exception that presents the serious question in the case. The result of this instruction was that the defendant, as a matter of law, was held guilty of negligence if he told the plaintiff that the elevator would not be run, and notwithstanding that information the elevator did run. It is conceded that the elevator was run during the time that the plaintiff was at work, and that the accident was caused, not by the elevator striking the platform or the plaintiff, but by the descent of the counterweights in the elevator shaft as the elevator went up from the cellar to or above the store floor. I do not think, as a matter of law, it was negligence for the defendant to run this elevator below the place that the plaintiff was at work during the time that he was working there. I agree with the plaintiff that this was a question for the jury; that considering the conditions, if the jury believed that the plaintiff's attention had been called to these weights, and to the danger that they would be to a man working upon the ninth floor in the elevator shaft if the elevator was running, and that, notwithstanding, the defendant instructed his employé to run the elevator, without warning the men at work of the danger, they would have been justified in finding negligence. But that was not what the court charged. The instruction was that if the jury found that the defendant told the plaintiff that the elevator would not run while he was at work, and, notwithstanding, it did run, and because of its running the plaintiff was injured, then the defendant was guilty of negligence. Negligence is a conclusion of fact to be drawn from the ex-

isting conditions at the time of the injury. There was no contractual relation between the plaintiff and the defendant, and there was not imposed upon the defendant the duty that is imposed upon a master to furnish his servant with a safe place to work and proper appliances with which to do the work. The plaintiff was under the control of his employer, who was present and at work with him upon the premises' at the time of the accident. Upon the plaintiff's employer devolved the duty of furnishing him with a safe place in which to work and the proper appliances with which to do the work. The duty that was imposed upon the defendant was that he should not be guilty of negligence which would cause injury to those at work in the building, and it was a violation of this duty which would justify a recovery against him. It certainly was not, as a matter of law, negligent to operate this elevator on the lower floors while the plaintiff was at work in the elevator shaft. The fact that these counterweights would rise and fall as the elevator was used was perfectly apparent from the situation. All that the men working in the shaft had to do was to keep their feet away from the side wall of the elevator shaft where these counterweights ascended and descended. The defendant denied having any conversation with the plaintiff, and denied that his attention was called to the counterweights, or any danger that would result to any one working in the shaft from them; and while I think there was a question for the jury, and that if they found that the defendant had assured the plaintiff that the elevator would not be run, and notwithstanding such assurance he gave instructions to run it after his attention had been called to the danger of these counterweights, it was for them to determine whether, under the circumstances, he was negligent. While the question of negligence was for the jury, it was error for the court to charge that any act of the defendant, in view of the relation of the parties, was, as a matter of law, negligence; and for this reason we are required to reverse the judgment.

It follows that the judgment and order appealed from should be reversed, and a new trial ordered, with costs to the appellant to abide the event. All concur, except PATTERSON, J., who dissents.

---

### HELD v. BURKE et al.

(Supreme Court, Appellate Division, First Department. May 22, 1903.)

1. MECHANICS' LIEN—NOTICE—AMOUNT CLAIMED.

2. SAME—RIGHT OF TRUSTEE IN BANKRUPTCY.

One's right to file a notice of and enforce a mechanic's lien passes to his trustee in bankruptcy.

3. BOND—AMOUNT OF SURETY'S LIABILITY—COSTS.

Under a bond providing that the surety will pay any judgment which may be recovered in an action to enforce a mechanic's lien, not exceeding $1,100, the recovery being less than $1,100, the surety is also liable for costs, though they bring the total to over $1,100.