Mary Walsh, as Administratrix, etc., of Walter Walsh, Deceased, Respondent, *v.* Adolph Riesenberg and Others, Appellants, Impleaded with the General Fire Extinguisher Company.

*Negligence — a man standing in the street struck by iron pipes which, while being hoisted on an elevator, fell through a window in the elevator shaft — when the elevator man was the servant of the owner of the building and not of the contractor for whom the pipes were being hoisted — when an error in the charge in this respect requires the reversal of a judgment in favor of the owner and against the contractor.*

In an action brought against Koch & Co. and the General Fire Extinguisher Company to recover the damages resulting from the death of the plaintiff's intestate, it appeared that the General Fire Extinguisher Company had a contract for the installation of fire extinguishing apparatus in the store of the firm of Koch & Co. The foreman in charge of the work for the fire extinguisher company had no power to hire or discharge employees.

In the course of this work it was necessary to convey iron pipes from three to ten feet in length to the sixth floor of the building. While the contract did not provide that Koch & Co. should transport the pipes, that firm allowed the elevator in the building to be used for that purpose. This elevator was located in a well situated in a corner of the building adjacent to the street. On one side of the elevator was a door affording access to the street, above which windows opened upon the street at each floor, and on the other side there was a door affording access from the elevator to the different floors of the building.

On the day of the accident Koch & Co. had told one Baumann, the elevator man employed by them, not to transport any more goods for the firm, but to run the elevator for the purpose of transporting the pipes; that he must not handle the pipes, but simply see that the elevator was properly used.

A load of pipes having been delivered on the sidewalk, the elevator was loaded with them by employees of the fire extinguisher company. Some of the pipes were laid on the floor of the elevator; longer pipes were placed upright on the floor leaning against the side of the elevator; other pipes still longer were placed upright resting against the crotch of the crossbars at the top of the elevator and projecting beyond the top, making it necessary to stop the elevator before it reached the sixth or top floor.

Baumann, who dictated when a sufficient load was put on the elevator, ran the elevator to within three feet of the sixth floor, stopping at this point to prevent the projecting pipes from striking the machinery at the top of the shaft. An employee of the fire extinguisher company then went to secure assistance in unloading the pipes. While Baumann was alone in the elevator some of the pipes fell through one of the windows in the elevator shaft, killing the plaintiff's intestate, who was then on the sidewalk below, having been one of the truckmen who delivered the pipes at the building. The gate on the street and window side of the elevator was not closed at the time of the accident.

The court submitted to the jury the question whether Baumann at the time of the accident was in the employ of Koch & Co. or the fire extinguisher company and the jury rendered a verdict in favor of Koch & Co. and against the fire extinguisher company.

*Held*, that whatever negligence existed arose either from the manner of loading the elevator or from a failure to shut the elevator gate, or from the starting of the elevator by Baumann after he had stopped below the sixth floor, thus running the pipes, projecting above the elevator, into the machinery at the top of the elevator well;

That if the negligence resulted from the manner of loading, this being done by the servants of the General Fire Extinguisher Company, that company would be alone liable; that if the negligence was by reason of Baumann's failure to shut the elevator gate or run the elevator properly, then Koch & Co. would be alone liable, unless Baumann had become the servant on this occasion of the General Fire Extinguisher Company;

That the evidence was not sufficient to warrant a finding that Baumann on the occasion of the accident was not the servant of Koch & Co. and was the serv-

ant of the fire extinguisher company, and that the court should not have submitted this question to the jury;

That in order to establish the liability of one person for an injury caused by the negligence of another, it is not enough to show that the latter was at the time acting under an employment by the former; it must be shown in addition that the employment created the relation of master and servant;

That the relation of master and servant exists where the employer selects the workman, may remove or discharge him for misconduct, and may order not only what work shall be done, but the mode and manner of performance;

That even if it could be said in the present case that the fire extinguisher company exercised such control over Baumann as to direct when he should start, and when and where he should stop the elevator, this would not be sufficient to make him its servant;

That the submission to the jury of the question whether Baumann was in the employ of Koch & Co. or of the fire extinguisher company required the reversal of the judgment in favor of Koch & Co.;

That this error required the reversal of the judgment in favor of Koch & Co.

That, as the jury might have found that the accident was caused by Baumann's negligence and that he was the servant of the fire extinguisher company, the judgment against the fire extinguisher company should also be reversed.

INGRAHAM, J., dissented.

APPEAL by the defendants, Adolph Riesenberg and others, from an order of the Supreme Court, made at the New York Trial Term and entered in the office of the clerk of the county of New York on the 29th day of April, 1902, granting the plaintiff's motion to set aside the verdict of a jury in favor of the defendants Adolph Riesenberg and others, who were copartners conducting business under the firm name of H. C. F. Koch & Co., and for a new trial.

*H. Snowden Marshall*, for the appellants.

*Frederick L. Taylor*, for the respondent.

Order affirmed, with costs, on the opinion of the court below.

INGRAHAM, J., dissented.

The following is the opinion of HOUGHTON, J., delivered at the New York Trial Term:

HOUGHTON, J.:

The General Fire Extinguisher Company was engaged in installing a fire extinguishing apparatus in the store of the defendants Koch & Co. The apparatus required pipes of various lengths, and they were being fitted in a temporary workshop set apart by the defendants Koch & Co. on the sixth floor of their building. In the southwest corner of the building was an elevator used for trans-

porting freight to and from the various floors and as a passenger elevator for the employees of Koch & Co. For a number of years one Baumann had been in the employ of the defendants Koch & Co. in charge of this elevator. The contract for the installation of the fire apparatus was in writing, and in a companion case to the one at bar (*Connor* v. *Koch*, 63 App. Div. 257) the Appellate Division held that the provisions of the contract did not require Koch & Co. to transport the pipes to the sixth floor. However, it was necessary that the pipes should be taken to that floor, and from time to time the elevator had been used for that purpose, Baumann having charge of the running of it, and the fire extinguisher company's employees attending to the loading and the unloading of the pipe. Along the street side of the elevator well was a line of windows opening upon the street at each story. The length of the pipe varied from three or four feet to about' ten feet. They were tied in bundles, the longer bundles consisting of three pipes weighing about seventy pounds. The shorter bundles were laid on the floor of the elevator; bundles too long to be so placed were placed at an angle inside the elevator, with one end upon the floor and the other end leaning against the side of the elevator opposite the street. Bundles too long for this purpose were placed in the crotch of the crossbars of the top of the elevator, the cage of the top of the elevator being raised for that purpose, one end resting upon the floor of the elevator and the other passing above the top of the elevator. These long bundles did not rest upon the floor at such an angle as did those inside the elevator, but only at such angle as would support them in the crotch of the elevator crossbars. This projection of the pipe and uplifted screen of the elevator made it necessary to stop the elevator at a point where its floor was about three feet below the floor of the sixth story. In the *Connor Case* (*supra*) the Appellate Division held that no negligence could be imputed for stopping the elevator in this position, because it was a manifestly prudent thing to do rather than run the risk of a certain accident in running the pipe and screen into the machinery of the elevator on the ceiling of the sixth floor. On the day of the accident the plaintiff's intestate, who was employed by a trucking firm, together with his companion Connor, had delivered a load of pipe to the defendant the General Fire Extinguisher Company, and placed it on the sidewalk,

# 470

or just within a vestibule connecting with the street door of the elevator. The elevator was loaded in the manner described by the servants of the defendant the General Fire Extinguisher Company. Baumann dictated when a sufficient load was placed upon the elevator. One elevator load had been carried to the sixth floor, and the second load had been transported to the point within three feet of the floor of the sixth story, Baumann stopping the elevator at that point, while one of the servants of the defendant the General Fire Extinguisher Company went to the front part of the sixth floor to notify the men to come and unload the elevator. While he was gone on this errand, and while Baumann was the only man on the elevator, either one of the bundles of pipe that was resting in the crotch of the elevator, or one of the larger bundles, which was resting at an angle inside the elevator, came through the upper sash of the fifth story window to the sidewalk, killing plaintiff's intestate and his companion Connor. The elevator had a gate at its door on the street and window side, which was not closed when freight was being transported, and only when passengers were being carried, and was not closed at the time the accident happened. The elevator had another door on the other side, leading to the floors of the building. Baumann said that the first he knew of any trouble he saw one of the bundles of pipe sliding past him. A witness, who was upon the opposite side of the street, testified that she saw other bundles projecting through the window drawn back and disappear from view. The action was brought against both Koch & Co. and the General Fire Extinguisher Company. A verdict was rendered against the General Fire Extinguisher Company and in favor of Koch & Co. The General Fire Extinguisher Company moves to set aside the verdict on the general ground, and the plaintiff moves, as well, to set aside the verdict in favor of Koch & Co. It is manifest that whatever negligence existed arose either from the manner of loading the elevator or from failure to shut the elevator gate, or from the starting of the elevator by Baumann after he had stopped below the sixth floor, and thus running the pipes projecting above the elevator into the machinery at the top of the elevator well. If the negligence resulted from the manner of loading, this being done by the servants of the General Fire Extinguisher Company, that company would be alone liable. If the negligence was by reason of Bau-

mann's failure to shut the elevator gate or run the elevator properly, then Koch & Co. would be alone liable, unless Baumann had become the servant on this occasion of the General Fire Extinguisher Company. This was the contention, on the trial, of Koch & Co., and in arriving at their verdict the jury must have found, or at least may have found, that Baumann was not the servant of Koch & Co. on this occasion, but had become the servant of the fire extinguisher company. I do not think there was sufficient evidence to warrant the jury in finding this fact, and upon the proofs I think the court erred in submitting that question to them, and that that error makes it necessary to grant the motions for a new trial. Baumann was the general servant of Koch & Co. Up to the day in question, at least, they were giving the use of their elevator and the services of their elevatorman to the General Fire Extinguisher Company for the purpose of transporting material to the sixth floor, where it was to be fitted for the fire extinguishing plant. There had been some delay in procuring the pipe. Murphy, the foreman of the General Fire Extinguisher Company, on the morning of the day of the accident, informed Riesenberg, the head of the firm of Koch & Co., that a quantity of pipe had arrived and that they would need the elevator all day. Mr. Riesenberg thereupon told Baumann not to transport any freight for his firm, but to run the elevator for the purpose of transporting pipe, and not to handle the pipes, but only to see that the elevator was properly used. At the completion of the contract Murphy gave Baumann five dollars, manifestly as a gratuity, which he testified was usual in such cases. Koch & Co. paid Baumann for this day's work, the same as other days, and it did not appear that Murphy, the foreman for the General Fire Extinguisher Company, had any power to hire or discharge men for the company. I do not think these facts were sufficient to show that Baumann had been transferred to the General Fire Extinguisher Company, or loaned to it for the day in question, so that he ceased to be the servant of Koch & Co., and became the servant of the General Fire Extinguisher Company. In order to establish the liability of one person for an injury caused by the negligence of another, it is not enough to show that the latter was at the time acting under an employment by the former; it must be shown in addition that the employment created the relation of master and

servant. (*Hexamer* v. *Webb,* 101 N. Y. 377.) The relation of master and servant exists where the employer selects the workman, may remove or discharge him for misconduct, and may order not only what work shall be done, but the mode and manner of performance. (*Butler* v. *Townsend,* 126 N. Y. 105.) The defendant the General Fire Extinguisher Company had no power to discharge Baumann, or to direct his manner of running the elevator and have its direction obeyed if Baumann had chanced to think that the direction would be injurious to the elevator or his general employer. Even if it be said that the company exercised such control over him as to direct when he should start, and when and where he should stop the elevator, this would not be sufficient to make him its servant. (*Johnson* v. *N. A. S. N. Co.,* 132 N. Y. 576; *Murray* v. *Dwight,* 161 id. 301.) It is claimed that *Higgins* v. *W. U. T. Co.* (156 N. Y. 75) and *Hallett* v. *N. Y. C. & H. R. R. R. Co.* (167 id. 543) are authorities contrary to the above view. I think not. In the former case the contractor was to furnish the elevator itself and had not turned it over to the defendant, and it was in the finishing of the elevator that the accident occurred, and the contractor had procured the defendant's general servant to operate the elevator by moving it up and down through the shaft for his convenience in plastering. The court held that the operator was acting under the orders of the plaintiff and for his sole convenience and benefit. In the latter case the person who opened the switch which caused the accident was paid by the telegraph company and was under their general direction and special control. The question when and under what circumstances the servant of a general master becomes the servant of another is more difficult of solution than the statement of the general propositions of law. But it seems to me that the facts proved were insufficient to authorize the jury to find that Baumann had been transferred from his general employer to the defendant against whom the verdict was rendered, and that the submission of the question to them was unauthorized. Koch & Co., even if it was not bound to do so by its contract, could, for the purpose of facilitating the work, give to the fire extinguisher company the use of its elevator and man to run it, for the transporting of pipes to the temporary workshop on the sixth floor, and it seems they did do so. The defendants Koch & Co. insist that the verdict in their

favor must stand, notwithstanding this situation, claiming that one codefendant has no legal cause of complaint because the law was laid down too favorably to his codefendant, or even if that codefendant erroneously escaped liability, citing as authority for the proposition *Zimmer* v. *Third Ave. R. R. Co., No. 1* (36 App. Div. 268) and *Deming* v. *Terminal Ry. Co.* (49 id. 493). An examination of the *Zimmer* case shows that the proposition is based upon the contingency that the complaining defendant was negligent and liable, and could not escape liability because of its own acts, and, therefore, could not complain that some one else was not made liable also. That case is further authority for the proposition that it is immaterial from what source a request or exception comes; if it be erroneous the judgment must be reversed. If there was error in submitting the question to the jury as to whose servant Baumann was, it permeated the entire verdict, the one against the codefendant as well as the one in favor of the other codefendant. The jury may have found that the accident was caused by the negligence of Baumann, and that he had become the servant of the defendant against whom they found the verdict. The question was raised in various ways, and exceptions taken which I have concluded were good. In addition, if the doctrine of *res ipsa loquitur* does not apply, it seems to me there is very grave doubt whether any negligence was proved on the part of any one. The testimony is that the pipes were loaded in the usual way and in the way they had been loaded previously; that the elevator was run in a careful way and not started again after it stopped three feet below the sixth-story floor, and that the elevator gate was not usually closed when transporting freight. There was no occasion to close it, unless it could be reasonably anticipated that some part of the elevator load would slide off. Whether any reasonable man could apprehend from the loading of the elevator or from the manner of its being operated that any such accident as did happen might occur, seems to me very doubtful, unless the fact, that the accident happened in opposition to the testimony of the witnesses as to what was done, makes a question of fact for the jury to pass upon. Upon all the questions involved I think justice is best subserved by granting the motions for a new trial.

Motions granted, with costs to abide the event.