protection of his employés unless it appears from the evidence in the case that some rules or regulations were practicable, and, if observed, would give such reasonable protection. A jury may not assume that a rule which occurs to them as a desirable one would be practicable, and would have prevented the injury, unless it appears in evidence that other companies have adopted and used it, or in some other way that experience or practical use has proven its efficiency. Larow v. New York, Lake Erie & Western R. R. Co., 61 Hun, 11, 15, 15 N. Y. Supp. 384; Smith v. Lidgerwood Mfg. Co., 56 App. Div. 528, 530, 67 N. Y. Supp. 533. And so, also, the defendant should not be held negligent in not having promulgated any particular rule until it appears that it should have foreseen and anticipated the necessity for the rule, and. that it was a practical and beneficial one. Morgan v. Hudson River Ore & Iron Co., 133 N. Y. 666, 31 N. E. 234. No evidence of any rule being used by any one else to regulate similar conditions was given, except in one instance of the General Electric Company; and, as I read the evidence, that rule was not promulgated until after this accident occurred. Moreover, the jury were not confined to the inquiry whether such a rule should have been adopted, but were allowed to hold the defendant negligent if any rule whatever would, in their judgment, have averted the accident. Within the cases above cited, such inquiry was much too broad, and not warranted by the law.

There are many other exceptions taken by the defendant's counsel which present very serious objections to sustaining this judgment, but the errors above pointed out require its reversal, and I do not further examine them.

Judgment and order reversed, and a new trial granted; costs to appellant to abide the event. All concur; SMITH and CHASE, JJ., in result.

(94 App. Div. 466.)

WALSH v. REISENBERG et al.

(Supreme Court, Appellate Division, First Department. May 20, 1904.)

1. MASTER AND SERVANT—EXISTENCE OF RELATION—EVIDENCE.

One who was employed to operate an elevator in a store in. which a fire extinguisher system was being placed was instructed by his employer to run the elevator for the purpose of transporting pipes which were being used by those installing the extinguisher system, and not to handle the pipes, but only see that the elevator was properly used; and it appeared that, at the completion of the system, the foreman of those putting it in gave the operator of the elevator $5, which was shown to be usual in such cases. *Held,* that the evidence was insufficient to show that the elevator operator had been transferred to the one putting in the extinguisher system, or loaned to him, so as to render the one putting in the system liable for his negligence.

2. SAME—ACTION FOR TORT—CODEFENDANTS—JUDGMENT AGAINST ONE AND IN FAVOR OF OTHERS—NEW TRIAL.

A fire extinguisher system was being put in a building, and an elevator in the building, operated by a servant regularly employed for such service by the owner of the building, was used to convey iron piping for the purposes of the system from one floor to another, and some of the piping fell from the elevator, causing the death of plaintiff's intestate; and, in

an action for the death against the owner of the building and the one who was putting in the system, the question whether the elevator operator was at the time the servant of the owner of the building, or the servant of the one putting in the extinguisher system, and whose negligence, under the evidence, might have caused the injury, was erroneously submitted to the jury, which found in favor of the owner of the building, but against the one putting in the system. *Held*, that a motion for a new trial made by the unsuccessful defendant would be granted.

Ingraham, J., dissenting.

Appeal from Trial Term, New York County.

Action by Mary Walsh, as administratrix of the goods, chattels, etc., of Walter Walsh, deceased, against Adolph Reisenberg and others. Judgment in favor of plaintiff as against defendant the General Fire Extinguisher Company, and in favor of the other defendants. Defendants other than the General Fire Extinguisher Company appeal from an order granting a new trial. Affirmed on the opinion of the trial court.

The following is the opinion of the court below (Houghton, J.):

The General Fire Extinguisher Company was engaged in installing a fire extinguishing apparatus in the store of the defendants Koch & Co. The apparatus required pipes of various lengths, and they were being fitted in a temporary workshop set apart by the defendants Koch & Co. on the sixth floor of their building. In the southwest corner of the building was an elevator used for transporting freight to and from the various floors, and as a passenger elevator for the employés of Koch & Co. For a number of years one Baumann had been in the employ of the defendants Koch & Co., in charge of this elevator. The contract for the installation of the fire apparatus was in writing; and in a companion case to the one at bar (Connor v. Koch et al., 63 App. Div. 257, 71 N. Y. Supp. 836) the Appellate Division held that the provisions of the contract did not require Koch & Co. to transport the pipes to the sixth floor. However, it was necessary that the pipes should be taken to that floor, and from time to time the elevator had been used for that purpose; Baumann having charge of the running of it, and the fire extinguisher company's employés attending to the loading and the unloading of the pipes. Along the street side of the elevator well was a line of windows opening upon the street at each story. The length of the pipes varied from three or four feet to about ten feet. They were tied in bundles; the longer bundles consisting of three pipes, weighing about seventy pounds. The shorter bundles were laid on the floor of the elevator. Bundles too long to be so placed were placed at an angle inside the elevator, with one end upon the floor, and the other end leaning against the side of the elevator opposite the street. Bundles too long for this purpose were placed in the crotch of the crossbars of the top of the elevator, the cage of the top of the elevator being raised for that purpose; one end resting upon the floor of the elevator and the other passing above the top of the elevator. These long bundles did not rest upon the floor at such an angle as did those inside the elevator, but only at such angle as would support them in the crotch of the elevator crossbars. This projection of the pipes and uplifted screen of the elevator made it necessary to stop the elevator at a point where its floor was about three feet below the floor of the sixth story. In the Connor Case, supra, the Appellate Division held that no negligence could be imputed for stopping the elevator in this position, because it was a manifestly prudent thing to do, rather than run the risk of a certain accident in running the pipes and screen into the machinery of the elevator on the ceiling of the sixth floor. On the day of the accident the plaintiff's intestate, who was employed by a trucking firm, together with his companion, Connor, had delivered a load of pipe to the defendant the General Fire Extinguisher Company, and placed it on the sidewalk, or just within a vestibule connecting with the street door of the elevator. The elevator was loaded in the manner described by the servants of the de-

fendant the General Fire Extinguisher Company. Baumann directed when a sufficient load was placed upon the elevator. One elevator load had been carried to the sixth floor, and the second load had been transported to the point within three feet of the floor of the sixth story; Baumann stopping the elevator at that point while one of the servants of the defendant the General Fire Extinguisher Company went to the front part of the sixth floor to notify the men to come and unload the elevator. While he was gone on this errand, and while Baumann was the only man on the elevator, either one of the bundles of pipe that was resting in the crotch of the elevator, or one of the larger bundles, which was resting at an angle inside the elevator, came through the upper sash of the fifth-story window to the sidewalk, killing plaintiff's intestate and his companion, Connor. The elevator had a gate at its door on the street side, which was not closed when freight was being transported, and only when passengers were being carried, and was not closed at the time the accident happened. The elevator had another door, on the other side, leading to the floors of the building. Baumann said that, the first he knew of any trouble, he saw one of the bundles of pipes sliding past him. A witness who was upon the opposite side of the street testified that she saw other bundles projecting through the window drawn back and disappear from view. The action was brought against both Koch & Co. and the General Fire Extinguisher Company. A verdict was rendered against the General Fire Extinguisher Company and in favor of Koch & Co. The General Fire Extinguisher Company moves to set aside the verdict on the general ground, and the plaintiff moves, as well, to set aside the verdict in favor of Koch & Co.

It is manifest that whatever negligence existed arose either from the manner of loading the elevator, or from failure to shut the elevator gate, or from the starting of the elevator by Baumann after he had stopped below the sixth floor, and thus running the pipes projecting above the elevator into the machinery at the top of the elevator well. If the negligence resulted from the manner of loading, this being done by the servants of the General Fire Extinguisher Company, that company would be alone liable. If the negligence was by reason of Baumann's failure to shut the elevator gate or run the elevator properly, then Koch & Co. would be alone liable, unless Baumann had become the servant on this occasion of the General Fire Extinguisher Company. This was the contention, on the trial, of Koch & Co.; and in arriving at their verdict the jury must have found, or at least may have found, that Baumann was not the servant of Koch & Co. on this occasion, but had become the servant of the fire extinguisher company. I do not think there was sufficient evidence to warrant the jury in finding this fact, and, upon the proofs, I think the court erred in submitting that question to them, and that that error makes it necessary to grant the motions for a new trial. Baumann was the general servant of Koch & Co. Up to the day in question, at least, they were giving the use of their elevator and the services of their elevatorman to the General Fire Extinguisher Company for the purpose of transporting material to the sixth floor, where it was to be fitted for the fire extinguishing plant. There had been some delay in procuring the pipe. Murphy, the foreman of the General Fire Extinguisher Company, on the morning of the day of the accident informed Reisenberg, the head of the firm of Koch & Co., that a quantity of pipes had arrived, and that they would need the elevator all day. Mr. Reisenberg thereupon told Baumann not to transport any freight for his firm, but to run the elevator for the purpose of transporting pipes, and not to handle the pipes, but only to see that the elevator was properly used. At the completion of the contract, Murphy gave Baumann $5, manifestly as a gratuity, which he testified was usual in such cases. Koch & Co. paid Baumann for this day's work, as well as other days; and it did not appear that Murphy, the foreman for the General Fire Extinguisher Company, had any power to hire or discharge men for the company.

I do not think these facts were sufficient to show that Baumann had been transferred to the General Fire Extinguisher Company, or loaned to it, for the day in question, so that he ceased to be the servant of Koch & Co., and became the servant of the General Fire Extinguisher Company. In order to establish the liability of one person for an injury caused by the negligence

of another, it is not enough to show that the latter was at the time acting under an employment by the former. It must be shown, in addition, that the employment created the relation of master and servant. Hexamer v. Webb, 101 N. Y. 377, 4 N. E. 755, 54 Am. Rep. 703. The relation of master and servant exists where the employer selects the workman, may remove or discharge him for misconduct, and may order not only what work shall be done, but the mode and manner of performance. Butler v. Townsend, 126 N. Y. 105, 26 N. E. 1017. The defendant the General Fire Extinguisher Company had no power to discharge Baumann, or to direct his manner of running the elevator, and have its direction obeyed, if Baumann had chanced to think that the direction would be injurious to the elevator or his general employer. Even if it be said that the company exercised such control over him as to direct when he should start and when and where he should stop the elevator, this would not be sufficient to make him its servant. Johnson v. N. A. S. N. Co., 132 N. Y. 576, 30. N. E. 505; Murray v. Dwight, 161 N. Y. 301, 55 N. E. 901, 48 L. R. A. 673.

It is claimed that Higgins v. W. U. T. Co., 156 N. Y. 75, 50 N. E. 500, 66 Am. St. Rep. 537, and Hallett v. N. Y. C. & H. R. R. R., 167 N. Y. 543, 60 N. E. 653, are authorities contrary to the above view. I think not. In the former case the contractor was to furnish the elevator itself, and had not turned it over to the defendant, and it was in the finishing of the elevator that the accident occurred; and the contractor had procured the defendant's general servant to operate the elevator by moving it up and down through the shaft for his convenience in plastering. The court held that the operator was acting under the orders of the plaintiff and for his sole convenience and benefit. In the latter case the person who opened the switch which caused the accident was paid by the telegraph company, and was under their general direction and special control.

The question when and under what circumstances the servant of a general master becomes the servant of another is more difficult of solution than the statement of the general propositions of law. But it seems to me that the facts proved were insufficient to authorize the jury to find that Baumann had been transferred from his general employer to the defendant, against whom the verdict was rendered, and that the submission of the question to them was unauthorized. Koch & Co., even if it was not bound to do so by its contract, could, for the purpose of facilitating the work, give to the fire extinguisher company the use of its elevator, and man to run it, for the transporting of pipes to the temporary workshop on the sixth floor, and it seems they did do so.

The defendants Koch & Co. insist that the verdict in their favor must stand, notwithstanding this situation; claiming that one codefendant has no legal cause of complaint because the law was laid down too favorably to his codefendant, or even if that codefendant erroneously escaped liability; citing as authority for the proposition Kimmer v. Third Ave. R. R., 36 App. Div. 268, and Deming v. Terminal Ry., 49 App. Div. 493. An examination of the Zimmer Case shows that the proposition is based upon the contingency that the complaining defendant was negligent and liable, and could not escape liability because of its own acts, and therefore could not complain that some one else was not made liable also. That case is further authority for the proposition that it is immaterial from what source a request or exception comes; if it be erroneous the judgment must be reversed. If there was error in submitting the question to the jury as to whose servant Baumann was, it permeated the entire verdict—the one against the codefendant as well as the one in favor of the other codefendant. The jury may have found that the accident was caused by the negligence of Baumann, and that he had become the servant of the defendant against whom they found the verdict. The question was raised in various ways, and exceptions taken which I have concluded were good. In addition, if the doctrine of res ipsa loquitur does not apply, it seems to me there is very grave doubt whether any negligence was proved on the part of any one. The testimony is that the pipes were loaded in the usual way, and in the way they had been loaded previously; that the elevator was run in a careful way, and not started again after it stopped three feet below the sixth-story floor; and that the elevator gate was not usually closed when transporting freight. There was no occasion to close it, unless it could be

reasonably anticipated that some part of the elevator load would slide off. Whether any reasonable man could apprehend, from the loading of the elevator, or from the manner of its being operated, that any such accident as did happen might occur, it seems to me very doubtful, unless the fact that the accident happened, in opposition to the testimony of the witnesses as to what was done, makes a question of fact for the jury to pass upon. Upon all the questions involved, I think justice is best subserved by granting the motions for a new trial.

Motions granted, with costs to abide the event.

Argued before VAN BRUNT, P. J., and HATCH, O'BRIEN, INGRAHAM, and LAUGHLIN, JJ.

W. S. Marshall, for appellants.
F. L. Taylor, for respondent.

PER CURIAM. Order affirmed, with costs, on the opinion of the court below.

INGRAHAM, J., dissents.

---

(96 App. Div. 71.)

### MULLER et al. v. NATIONAL BANK OF CORTLAND.

(Supreme Court, Appellate Division, Third Department.   June 30, 1904.)

1. BANKS AND BANKING—DEPOSITS—PAYMENT OF CHECKS—FORGED INSTRUMENTS—LIABILITY OF SUBSEQUENT INDORSER—DEFENSE OF SUIT—COSTS.

A depositor in plaintiffs' bank drew checks thereon payable to a payee, whose agent forged the payee's signature, after which the checks were presented to plaintiffs for payment with the forged signature and the subsequent signature of defendant bank thereupon. Plaintiffs paid the checks, and charged them to the depositor's account, and were sued in conversion by the payee. Defendant declined to defend the action, after having been requested to do so, although it approved of the defense interposed by plaintiffs. Judgment was rendered against plaintiffs, which they paid. *Held*, that plaintiffs could not recover from defendant, because of its subsequent indorsement, the costs or counsel fees incurred in defending the action.

2. SAME—APPROVAL OF DEFENSE—EFFECT.

The fact that defendant approved of the defense interposed by plaintiffs did not render it liable for costs, after having specifically declined to assume the defense.

3. SAME—GOOD FAITH—SUCCESS OF DEFENSE.

Nor was plaintiffs' right to recover costs enlarged by their good faith in asserting the defense, or their partial success in defeating a recovery on one of the checks which were the subject of the action.

Controversy submitted under Code Civ. Proc. § 1279, by Peter D. Muller and Albert C. Muller against the National Bank of Cortland, N. Y.   Judgment ordered for plaintiffs.

The plaintiffs are bankers doing business under the name of Muller Bros. at Cortland, N. Y.   F. J. Westcott was a depositor in the plaintiffs' bank, and drew three checks thereupon—one of $64.42, bearing date April 22, 1897; the second of $33.75, bearing date August 20, 1897; and the third of $8.32, bearing date February 16, 1898.   These checks were made payable to the Dunn-Salmon Company, who were selling goods to Westcott through their agent, one C. F. Seybold.   Upon these checks the signature of the payee was afterwards forged by said Seybold, and the checks were presented to the plaintiffs for