Chamberlain v. Lee.

## H. S. CHAMBERLAIN *et al. v.* R. M. LEE.*

### (*Nashville.* December Term, 1923.)

1. **NEGLIGENCE.** Contractor's employee licensee.

A contractor and his employees working in a building are not mere licensees, but are entitled to protection from negligence in the operation of an elevator therein. (*Post, pp.* 641-644.)

2. **MASTER AND SERVANT.** Master must resign full control of servant to escape responsibility.

To escape responsibility for a servant's negligence on the theory that he was loaned to an independent contractor, the master must have resigned full control of him for the time being. (*Post, pp.* 641-644.)

3. **MASTER AND SERVANT.** Elevator operator held not employee of independent contractor.

An elevator boy instructed to run the elevator as directed by an independent contractor's employee while repairing the signal system *held* not a lent servant entirely beyond the control of the building owners, so as to absolve them from liability for injuries to the contractor's employee as a result of the boy's negligence. (*Post, pp.* 641-644.

Cases cited and approved: Sanford v. Keef, 140 Tenn., 368; Powell v. Construction Co., 88 Tenn., 692; Beatty v. Metropolitan Bldg.

---

*On question of responsibility of general employer for negligence of employee in operating elevator for convenience of workman not in former's employ, see note in L. R. A. 1917E, 964.

On independent contractor within the meaning of the rules governing liability of employers, see notes in 65 L. R. A. 445 and 17 L. R. A. (N. S.) 371.

On elements bearing directly upon the quality of a contract as affecting the character of one as independent contractor, see note in 20 A. L. R. 684.

Chamberlain v. Lee.

Co., 63 Wash., 207; Siegel v. Norton, 209 Ill., 201; Rink v. Lowry, 38 Ind., App., 132; Donovan v. Gay, 97 Mo., 440; Harmer v. Reed Apt., etc., Co., 68 N. J. Law, 332; Pelzel v. Schepp, 83 App. Div., 444; Walsh v Riesenberg, 94 App. Div., 466; George A. Fuller Co. v. McCloskey, 35 App. D. C., 595.

4. **APPEAL AND ERROR.** Instructions held harmless in view of proper submission of sole question on which evidence was conflicting.

In an action against building owners for injuries to an independent contractor's employee in consequence of an elevator boy's negligence in moving the car, where the only conflict in the evidence was as to whether he moved it at plaintiff's direction, which was fairly left to the jury, who found against defendants, other instructions were not prejudicial to them. (*Post, pp. 644, 645.*)

5. **MASTER AND SERVANT.** Instruction on owners' liability for negligence of elevator operator held properly refused.

In an action against owners of a building for injuries to an independent contractor's employee in consequence of elevator boy's negligence in moving the car without an order, an instruction that, if he thought plaintiff ordered him to do so, plaintiff could not recover, though the boy misunderstood or was mistaken as to plaintiff's order, was properly refused as ignoring the boy's care and attention to plaintiff at the time. (*Post, p. 645.*)

6. **TRIAL.** Correct request for supplemental instruction must be framed.

To supplement an instruction correct as far as it goes, a correct request must be framed. (*Post, p. 646.*)

---

FROM  HAMILTON.

---

Appeal from the Circuit Court of Hamilton County to the Court of Civil Appeals, and by *certiorari* to the Court of Civil Appeals from the Supreme Court.—HON. OSCAR YARNELL, Judge.

T. POPE SHEPHERD, for plaintiff.

W. T. MURRAY and FORD & BRYAN, for defendants.

MR. CHIEF JUSTICE GREEN delivered the opinion of the Court.

The defendants below were the owners of an office building in Chattanooga. The signal system on the elevator got out of order, and they employed a firm of electrical contractors to remedy this trouble. The plaintiff below was an employee of the contractors, sent to make the repairs, and while engaged in this work was seriously hurt by the alleged negligence of the elevator attendant. Suit was brought to recover for these injuries, and there was a judgment which has been affirmed by the court of civil appeals. The case is before us on petition for *certiorari* to the latter court, and has been argued here. The parties will be referred to as they were styled in the trial court.

Upon reaching the building where he was sent by his employer the plaintiff sought the janitor and inquired more particularly about the nature of the repairs to be made. It was explained by the janitor that the call bell in the elevator cage would not ring when the button on the top floor of the building was pushed. This janitor who had control of the building at the time directed the elevator boy to operate the cage as instructed by plaintiff while the repairs were being made. The janitor says that he "told Charley [the elevator boy] to run the elevator as this man told him to. I says to Charley, 'Charley, you do what this man tells you to do.'" The janitor repeated several times in his testimony that he left instructions with the elevator boy to run the elevator up and down as the plaintiff wanted it.

The plaintiff got into the elevator cage and rode up to the top floor. He got out there and examined the push button, and found nothing wrong with it. He had the elevator cage lowered until the top of the cage was accessible from the top floor, and he then got on the top of the cage and had it slowly lowered while he examined the wires running from the push button down the elevator shaft to the basement. As the car was descending, the plaintiff traced these wires along down the shaft until the elevator reached the bottom of the building. He was not able to find any trouble with the wires as he went down in this manner on the top of the cage. He then got off the top of the cage on the second floor and walked down the stairway into the basement. He told the elevator boy to hold the cage at the second floor, and he (plaintiff) then went down in the basement and into the bottom of the elevator shaft to pursue his investigations. The elevator boy promised not to move the cage until he was told to do so by the plaintiff. Plaintiff climbed up some cleats, a sort of ladder at the side of the shaft, and was examining the wires there looking for the trouble. He was sitting in a manhole that opened out from the side of the elevator shaft. In this position he was directly under the counterweights, which regulated the operation of the elevator. At this time the elevator boy started the cage up toward the top of the building. This let the counterweights down upon the plaintiff, and inflicted upon him injuries, the gravity of which is not in dispute.

There is no controversy about these facts. The elevator boy claimed that he moved the car up because he thought he heard plaintiff call to him to do so. The plaintiff testified that he gave no such directions to the eleva-

tor boy, and said nothing whatever to him, at the time this movement was made. Plaintiff was a mechanic of expe-rience, and was directly under the counterweights at the time they were let down upon him.

The chief contention of the defendants is that the plain-tiff was the employee of an independent contractor; that at the time of this accident the elevator boy occupied the position of a servant loaned to the independent contrac-tor, and under the control of plaintiff, and that therefore, plaintiff received his injuries at the hands of his fellow servant, and a servant of the contractor, and defendants are accordingly not liable.

We think it may be conceded that the electrical firm called upon by the defendants to do this work was an in-dependent contractor, and that plaintiff was its employee at the time he was hurt. We do not, however, agree that the elevator boy at this time could be regarded as a lent servant beyond the control of the defendants.

A contractor and his employees doing work in a build-ing are not mere licensees, but are entitled to protection from negligence in the operation of an elevator in the building. 9 R. C. L., 1256, and authorities hereinafter cited.

Unless, therefore, the elevator boy was at the time of this accident in the position of a servant loaned to the contractor, the defendants would be liable for the injuries suffered by the plaintiff.

There was no formal contract between the defendants and the electrical firm. The latter were merely asked to make these repairs, and sent plaintiff over to do the job. According to H. S. Chamberlain, Jr., one of the owners of the building, when anything got wrong with the elevator

138 Tenn.—41

it was his custom to turn over the elevator and the elevator attendant to the contractor while the repairs were being made. He said this custom was followed on this occasion, and the elevator and elevator boy turned over to the plaintiff.

Indicating more specifically what happened, the janitor, as above noted, stated that he told plaintiff what was wrong, and gave the elevator boy instructions to run the elevator up and down as plaintiff wanted him.

This does not make out a case of lending a servant. The servant was put under the control of plaintiff for one purpose alone. That is, to move the car up and down as plaintiff desired while the particular job was being done. The elevator car was put under the control of the plaintiff for the time, but it was put under his control along with its attendant, who remained in the service of the defendants. There is nothing to show that plaintiff could have discharged this boy, and put another boy to running the elevator at this time. Plaintiff certainly had no right to use this elevator boy for any purpose in connection with the work other than running the elevator up and down. The plaintiff could not have required the elevator boy to remain on duty for a longer period than his regular hours under his contract with defendants.

In order to escape responsibility for the negligence of his servant on the theory that the servant has been loaned, the original master must resign full control of the servant for the time being. It is not sufficient that the servant is partially under the control of a third person. 26 Cyc., 1522; 18 R. C. L., 784. The control of this servant was but partially transferred by defendants, with no right on the part of the plaintiff to discharge the elevator

boy, or to use his services generally in connection with the job. This case is therefore not within the authority of *Sanford* v. *Keef*, 140 Tenn., 368, 204 S. W., 1154.

As said before, there was no written contract by which the defendants surrendered control of this elevator boy or undertook to transfer his services generally to plaintiff's employer. *Sanford* v. *Keef*, supra, and *Powell* v. *Construction Co.*, 88 Tenn., 692, 13 S. W., 691, 17 Am. St. Rep., 925, are not in point. The general employer here only authorized the servant to do a particular thing for the independent contractor, and the general employer in our opinion did not give up his authority over the servant. In fact, in doing this particular thing, running the elevator according to plaintiff's instructions, the servant was acting under the explicit direction of the janitor.

The case seems to us to be one in which the defendants merely agreed to assist the contractor by directing the elevator boy to operate the car under the instructions of the contractor's employee while the repairs were being made. While so acting the boy was in the service of defendants, who were co-operating with the contractor in making these repairs. See *Powell* v. *Construction Co.*, supra.

What we have said is in accord with the weight of judicial authority.

It has been held in numerous cases that the owners of an elevator are liable to the employee of a contractor who was struck by the elevator cage or by the counterweights while working in the shaft with the knowledge of the owner or of the elevator operator. *Beatty* v. *Metropolitan Bldg. Co.*, 63 Wash., 207, 115 Pac., 90, L. R. A.,

1917E, 961, Ann. Cas., 1912D, 528; *Siegel* v. *Norton,* 209 Ill., 201, 70 N. E., 636; *Rink* v. *Lowry,* 38 Ind. App., 132, 77 N. E., 967; *Donovan* v. *Gay,* 97 Mo., 440, 11 S. W., 44; *Harmer* v. *Reed Apt., etc., Co.,* 68 N. J. Law, 332, 53 Atl., 42; *Pelzel* v. *Schepp,* 83 App. Div., 444, 82 N. Y. Supp., 423; *Walsh* v. *Riesenberg,* 94 App. Div., 466, 89 N. Y. Supp., 58; *George A. Fuller Co.* v. *McCloskey,* 35 App. D. C., 595.

Other cases to the same effect may be found collected in Notes, Ann. Cas., 1912D, 531, and L. R. A., 1917E, 961.

The chief defense in all these cases was that it was not within the scope of the authority of an elevator attendant to make an agreement with a mechanic working in the shaft that the car would not be moved so as to injure the workman. This defense has, however, been very generally rejected.

In *Rink* v. *Lowry,* supra, *Walsh* v. *Riesenberg,* supra, *George A. Fuller Co.* v. *McCloskey,* supra and *Beatty* v. *Metropolitan Bldg. Co.,* supra, it was argued that the elevator attendant under such circumstances became the servant of the contractor or the contractor's employee, but in each of these cases this argument was deemed illfounded.

From the foregoing it follows that in our opinion the trial judge was right when he reconsidered his action on the first trial of this case where he directed a verdict in favor of the defendants. He correctly overruled a motion of the defendants for a directed verdict upon the second trial.

The case was submitted to the jury, and they left to say whether the plaintiff was the servant of the defend-

Chamberlain v. Lee.

ants at the time of the accident, and, in event they so found, the further question of defendants' obligation to warn the plaintiff upon moving the car was submitted to the jury. The trial judge was of opinion, apparently, that, if the plaintiff remained the servant of an independent contractor, defendants would not be liable.

We think this conception of the case was erroneous, and certain of the instructions improper, but we do not believe they were prejudicial. As we view the evidence there is but one conflict in it, whether or not the elevator boy moved the car at the direction of plaintiff. This question was fairly left to the jury, and they were told that, if the car was so moved at plaintiff's direction, he could not recover, and the jury, of course, found this issue against defendants. Other instructions, therefore, did no harm to defendants. The trial judge might have told the jury to find for the plaintiff if they found that the elevator car was negligently moved without plaintiff's directions.

Error is assigned upon the refusal of the trial judge to give in charge a request of defendants as follows:

"If the elevator boy moved the elevator at the time of the injuries thinking that plaintiff had ordered him to move the elevator up, then plaintiff cannot recover, even though the elevator boy misunderstood the plaintiff or made a mistake as to the statement of plaintiff, or any statement or order from plaintiff."

We think there was no error in refusing this instruction. It left entirely out of consideration the care and attention which the elevator boy was giving to the plaintiff at the time he moved the car. Under this instruction, if the elevator boy, wholly inattentive and careless, had moved the

car upon some call which he fancied came from plaintiff, defendants would have been excused. This, of course, could not be the law.

The charge of the trial judge as to this supposed direction to move the elevator that the attendant claimed to have received from plaintiff was correct as far as it went. If it was desired that the instruction should be supplemented, a correct request must have been framed.

Upon the whole case we think the merits have been reached. The determinative issue of fact, and the only issue of fact which we deem material, was left to the jury under fair instructions, and they found for the plaintiff. The errors relied on were not harmful to the defendants.

For the reasons stated, the judgment of the lower courts is affirmed.

NOTE:—Mr. Justice Chambliss did not sit in this case or participate in the deliberations of the court upon it.