# J. W. SANFORD v. W. R. KEEF.*

## (Jackson. April Term, 1918.)

1. **SALES.** Delivery.

Contract for sale of cotton gin, passing title on delivery to carrier, warranting the gin if erected according to plan furnished, and binding the purchaser to make the erection, become a completed sale on delivery to the carrier of the gin, and the erection was the work of the purchaser. (*Post*, p. 372.)

2. **SALES.** Construction of writings. Questions for court.

Construction and legal effect of an unambiguous, unequivocal written contract for sale of a cotton gin are matters of law for the court. (*Post*, p. 372.)

3. **MASTER AND SERVANT.** Character of relationship.

Where contract for sale of cotton gin passed title on delivery of gin to the carrier, and required the buyer to erect it, one injured in such work was not a servant of the seller, but of the buyer, though he was an expert furnished for the work by the seller, and though the buyer and his other servants looked to him for guidance in the work. (*Post*, pp. 372-374.)

Case cited and approved: St. Louis, etc., R. Co. v. Yates, 111 Ark., 486.

Case cited and distinguished: Arkansas Logging Co. v. Martin, 116 Ark., 318.

4. **MASTER AND SERVANT.** Character of relationship.

A servant who is employed and paid by one person may nevertheless be *ad hoc* the servant of another in a particular transaction. (*Post*, pp. 374-376.)

Cases cited and approved: Powell v. Construction Co., 88 Tenn., 692; Linnehan v. Rollins, 137 Mass., 123; Samuelian v. American Tool & Mach. Co., 168 Mass., 12; Wyllie v. Palmer, 137 N. Y., 248.

Case cited and distinguished: Delory v. Blodgett, 185 Mass., 126.

*Authorities discussing the question as to which of two persons is the master of another who is conceded to be the servant of one of them, are collated in a comprehensive note in 37 L. R. A. 33.

Sanford v. Keef.

5. **MASTER AND SERVANT.** Fellow servants.

If, while engaged in the work of the temporary or special master, the servant be injured by negligent act of the latter's other servants, he is, notwithstanding his general employment by another, a fellow servant of the special master's employees. (*Post, pp.* 376-379.)

Cases cited and approved: Purnell v. Great Western Railway, 1 Q. B. D., 636; Rourke v. White Moss Colliery Co., 2 C. P. D., 205.

Cases cited and distinguished: Hasty v. Sears, 157 Mass., 123; Euan v. Lippincott, 47 N. J. Law, 192.

6. **MASTER AND SERVANT.** Character of relationship.

Where contract for sale of cotton gin passed title on delivery of gin to the carrier, and required the buyer to erect it, and warranted the gin if erected as directed, under a servant of the seller, the seller's interest in the erection, in order to save it harmless under its guaranty, did not make the erection a joint enterprise. (*Post, pp.* 379-380.)

Cases cited and approved: Westover v. Hoover, 88 Neb., 201; Higgins v. Western Union Tel. Co., 156 N. Y., 75; Cunningham v Thief River Falls, 84 Minn., 21; St. Louis, etc., R. Co. v. Bell, (Okla.), 149 Pac., 336.

7. **MASTER AND SERVANT.** Lent servant.

To invoke doctrine of lent servants, the servant must, expressly or impliedly, acquiesce in the arrangement. (*Post, pp.* 380, 381.)

---

FROM SHELBY.

---

Error to the Circuit Court of Shelby County.— Hon. H. W. LAUGHLIN, Judge.

CARUTHERS EWING and JNO. M. STUCKY, for plaintiff in error.

MURRAY & GILLESPIE and B. F. BOOTH, for defendant in error.

MR. JUSTICE WILLIAMS delivered the opinion of the Court.

This action is one by Keef to recover damages of Sanford for personal injuries sustained while engaged in the erection of a cotton gin on the latter's plantation. A judgment, based upon a verdict in favor of Keef, was rendered in the circuit court, and an affirmance was the result of the appeal to the court of civil appeals. Sanford has petitioned this court for a review and reversal; and the cause was set down for oral argument at the bar of this court on points designated by us.

Sanford owned a plantation in the State of Arkansas, and contracted with the Gullett Gin Company for the purchase of a cotton gin. The terms of this contract shed much light upon the litigation. Under the contract the title to the gin passed to Sanford on delivery thereof f. o. b. cars of the common carrier for shipment to him. By one of the clauses it was provided:

"*Services of Erector.*—It is hereby expressly understood that if the Gullett Gin Company furnishes a man to superintend the erection of the above machinery, or should the undersigned need the services of a man from the factory for any purpose, the undersigned agrees to pay to the said Gullett Gin Company the sum of $5 per day for the time put in by such man while at work on the job, and in addition thereto the sum of $5 per day for his time

while traveling to and from my place, and the actual cost of his railroad fare, and other expenses en route to and from my place. The undersigned also agrees to board said man while at work on said job, and to furnish all material for the erection of said machinery not specified in this contract, and to furnish said superintendent with all help he may demand to erect the machinery with dispatch."

It was also stipulated that the vendor company warranted that the gin, with proper management, would perform what was claimed for it in printed circulars. In relation to and as a part of the language of this guaranty it was provided:

"The purchaser agrees to properly put up and operate machinery according to the plans furnished by the Gullett Gin Company, and that, if the fault be traceable to not putting up by these plans or operating according to directions, purchaser agrees to pay all expenses incurred in rectifying it."

Keef, a skilled man regularly in the employ of the gin company, was furnished as erector, and also there was sent another man, Barrett, who preceded Keef by several days.

Keef's claim and proof was to the effect that, when the work of installation had almost been accomplished, it was ascertained that a certain board or plank, in an aperture near the breast of the gin's saws, needed to be planed off to prevent contact or friction, that he went into the aperture for that purpose, first giving express direction that no one

should start the engine and cause the saws to revolve while he was compelled to stand near them, but that the engineer, provided by Sanford, to whom this direction was given, negligently started the engine and caused the saws to revolve, catching him as they did so and inflicting upon him serious injuries.

One of the questions upon which we asked oral argument was: Is not Keef in the attitude of being the employee of Sanford, as a lent servant subject to the control and discharge of the latter, as the one upon whom the work of installation of the gin alone rested?

We are of opinion that the transaction of sale to Sanford was completed when the engine was loaded at the gin company's factory, and that the work of installation devolved upon him as purchaser.

The contract was in writing, and was one for the sale and delivery of the gin, and, its language, not being ambiguous or equivocal, the construction and legal effect thereof upon the rights and duties of the contracting parties were and are matters of law for the court.

The gin company's printed forms were used in drafting the contract, and that company manifestly meant to safeguard itself from liability in this regard.

Explicitly the purchaser was to put up the machinery; and in doing so he was to conform to the plans furnished by the gin company, provided and so far as he might seek to hold the vendor liable on the

guaranty. It was, however, the right of Sanford to put up and operate the gin as he pleased, or in disregard of such plans. He elected to adopt the plans, and in the contract itself an erector was called for. When Keef arrived at the plantation and began work he engaged in a transaction which was the business of Sanford.

A fundamental error of the counsel of Keef in his analysis of the contract is that Sanford could not, except in breach of the contract, adopt his own methods for the installation of the gin. Except as affecting the right to invoke the protection of the guaranty, Sanford was free to determine his course, and when he undertook to pursue that outlined by the plans he none the less was the person responsible for the conduct of the work of construction.

In this view Keef could not be the servant of the gin company while working on a job that was not its, but Sanford's. The services of Keef were let by his general employer to Sanford.

The case of *Arkansas Logging Co.* v. *Martin,* 116 Ark., 318, 173 S. W., 184, is in point. There a skidder was sold to a logging company under a contract which recited:

"Price to include, without cost to us, services of a man to superintend and assist in the erection of the machine, . . . and, in addition, his services long enough to properly instruct our men in its manipulation, his board to be furnished by us."

Notwithstanding the wages of the lent servant were paid by the vendor company, it was held that he became the servant of the vendee logging company. The court said in respect to the vendor:

"It had no duties to perform with reference thereto as an independent contractor. It was not in the control of the operation of the machine. It did not have the control of the erection of the machine. . . . The supreme control of the operation of this machine at the time appellee received his injury was under appellant [the vendee]."

See, also, *St. Louis, etc., R. Co.* v. *Yates,* 111 Ark., 486, 165 S. W., 282.

A servant who is employed and paid by one person may nevertheless be *ad hoc* the servant of another in a particular transaction. The existence of that relation between the lent servant and his general employer does not exclude a like relation with a third person as special employer as concerns the service in which he is actually engaged. The true test is whether in the particular service which he is engaged in performing at the time he continues liable to the direction and control of the general master or becomes subject to that of the person to whom he is lent or hired. *Powell* v. *Construction Co.,* 88 Tenn., 692, 13 S. W., 691, 17 Am. St. Rep., 925; 1 Bailey, Personal Injuries, section 25; 1 Labatt, M. & S.. p. 170.

In reference to this test, it is said in 18 R. C. L., p. 784:

"In determining whether in respect of a particular act a loaned servant is the servant of his original master or of the person to whom he has been furnished, the general test is whether the act is done in the business of which the person is in control as proprietor, so that he can at any time stop or continue it and determine the way in which it shall be done, not merely in reference to the · result to be reached, but in reference to the method of reaching the result."

This language was taken from a case which involved an ordinary servant, and the phrase "but in reference to the method of reaching the result" is one of apt qualification in such instance. But in the pending suit Keef was not a subordinate. He was an experienced and skilled erector who it was expected would outline the methods and supervise the details in order to bring satisfactory results. Does the fact that Keef was looked to for guidance by Sanford and the workmen of the latter operate to make an exception to the rule? No.

In *Delory* v. *Blodgett*, 185 Mass., 126, 69 N. E., 1078, 64 L. R. A., 114, 102 Am. St. Rep., 328, an expert machinist was furnished who in his method of work acted upon his own judgment, and he was held to be the servant of the temporary master, the court saying:

"It makes no difference whether the proprietor to whom a servant is lent actually exercises his right of control and direction as to the details of the work,

or simply sets the servant to do what is necessary, trusting to his expert skill for the result. This was decided in *Linnehan* v. *Rollins,* 137 Mass., 123, [50 Am. Rep., 287]. As was said in *Samuelian* v. *American Tool & Mach. Co.,* 168 Mass., 12 [46 N. E., 98]: 'The fact that they relied largely upon his skill and experience did not affect their absolute right to control him in everything he did upon their machinery.' The question in every case is whether the proprietor for whom the work is being done has given up his proprietorship of the particular business to an independent contractor, and has thus divested himself of the right of control, so that he has no longer a legal right to terminate the work or direct it.''

The power was Sanford's to stop the work in event he changed his mind as to the work ability of the plans, to change the plans, or to discharge Keef if in his opinion Keef was incapable or insubordinate. This demonstrates where lay the supremacy of authority, over the work and all engaged in it, which is the ultimate test in such a case.

That the gin company would not be liable for acts of negligence of Keef to third persons is firmly settled by a long line of cases. *Wyllie* v. *Palmer,* 137 N. Y., 248, 33 N. E., 381, 19 L. R. A., 285; 18 R. C. L., p., 784, and cases cited.

If while engaged in the work of the temporary or special master the servant be injured by reason of the negligent act of the latter's other servants, he is,

notwithstanding his general employment, their fellow servant.

In *Hasty* v. *Sears,* 157 Mass., 123, 31 N. E., 759, 34 Am. St. Rep., 267, the plaintiff was a carpenter employed by the hour by the firm of Noyes & Co., as general employers. They sent him to defendant's building to do some work; he being directed to fix the framework of an elevator door. To do this it was necessary for him to stand in an elevator well. Orders were given to the elevator boy not to run the car below the second story until he was notified that plaintiff had finished, but later the boy ran the car below the second story so that it struck plaintiff. It was there said:

"It is obvious that C. A. Noyes & Co. were not contractors. The transaction between them and the defendant was the loan by them to the defendant of their servant, the plaintiff, who was to be under the control of the defendant by his superintendent while engaged in the work. This made the plaintiff *pro hac vice* a servant of the defendant. . . . The plaintiff was not acting under the immediate orders of his general master, C. A. Noyes & Co., but was acting under the orders of the defendant's superintendent, and thus became the defendant's servant, notwithstanding that he remained the general servant of Noyes & Co., and was paid by them. *Purnell* v. *Great Western Railway,* 1 Q. B. D., 636, as stated by MELLISH, L. J., in *Rourke* v. *White Moss Colliery Co.,* 2 C. P. D., 205, 210. . . .

"The plaintiff and the elevator boy were both servants of the defendant at the time of the plaintiff's injury, and, as their employment was a common employment, the negligence of the boy in running the car down upon the plaintiff was an obvious risk, which the plaintiff assumed, and for which the defendant is not answerable to him."

In *Ewan* v. *Lippincott*, 47 N. J. Law, 192, 54 Am. Rep., 148, defendant owned a mill and gave an order to master machinists to make alterations in the gearing of the waterwheel. The later sent the plaintiff to do the work; plaintiff understanding that the mill would run at such times as work was not being done on the wheel. While plaintiff was at work on the wheel the engineer of defendant negligently started the wheel, injuring plaintiff. It was held that the injury was caused by a fellow servant, against a contention that plaintiff was yet the servant of the master machinist. The court said, referring first to the power of the special employer:

"He had the power to direct the work in regard to the extent and character of the alterations, and in respect to the time at which and the circumstances under which it was to be done. He had the power to change, terminate, or suspend the work at any moment. Had an injury resulted to a third person by reason of the negligent act of such workman while acting within the line of the employment for which Derby & Weatherby had been engaged, there could

be no doubt that the defendant would have been liable to the injured person.''

A contention of the counsel of Keef is that, since the gin company had an interest in the proper operation of the mill to save it harmless under its guaranty, the work that was going forward at the time the injury was inflicted should be deemed to have been in pursuit of a common undertaking or in a common enterprise, and so far forth that Sanford would be liable.

Every authority that has ruled the exact point is in agreement that the existence in the general master of an interest in the prosecution of the transaction does not work a change in the rule or test. Shearman & Redfield on Negligence (5th Ed.), sections 160, 161; *Westover* v. *Hoover,* 88 Neb., 201, 129 N. W., 285; *Higgins* v. *Western Union Tel. Co.,* 156 N. Y., 75, 50 N. E., 500, 66 Am. St. Rep., 537; *Wyllie* v. *Palmer,* supra.

A ''joint enterprise'' or undertaking is not indicated by the contract or by the proof.

''Parties cannot be said to be engaged in a joint enterprise, within the meaning of the law of negligence, unless there be a community of interest in the objects or purposes of the undertaking, and an equal right to direct and govern the movements and conduct of each other with respect thereto. Each must have some voice, and right to be heard in its control and management.'' *Cunningham* v. *Thief*

*River Falls,* 84 Minn., 21, 86 N. W., 763; *St. Louis, etc., R. Co.* v. *Bell,* (Okl.), 159 Pac., 336, L. R. A., 1917A, 543.

The trial judge in his charge to the jury erroneously construed the contract to provide for a joint undertaking or enterprise in which Keef represented the gin company, on the idea that by the terms of the contract "the gin company would do the erecting." We have seen that the work of installation was that of Sanford; and Keef testified that he had control of the entire crew, including the man selected by him to act as engineer at the boiler, to whom he actually gave command not to start the boiler until told to do so. For whom but for Sanford could be so acting?

However, another principle recognized as being a constituent part of the doctrine of lent servants is this: The servant must assent to or acquiesce in the transfer from the one employer to the other. This need not be written or even verbal; it need not be express, but may be implied. "It may and very often does rest in the implication of circumstances." 18 R. C. L., p. 493.

The proof in the record is meager in respect to this matter. It is shown that Keef was "mechanical man of the Memphis district" for the gin company. In view of the fact that the case was inadequately developed in this respect, we are of opinion that we should not on the record now before us undertake to say that, as a matter of law, Keef should be held

Sanford v. Keef.

to have assented to the transfer, but that the case should be remanded for a new trial, wherein it may be developed and determined what the proper inference may be, as shown in 18 R. C. L., section 3, p. 494.

Reverse and remand accordingly.