WARDREP *et al. v.* HOUSTON.

(*Knoxville*, September Term, 1934.)

Opinion filed November 30, 1934.

Cates, Smith & Long and Wilbur W. Piper, all of Knoxville, for Vandergriff Truck & Crane Co. and Royal Indemnity Co.

Kennerly & Key, of Knoxville, for defendant in error.

Mr. Chief Justice Green delivered the opinion of the Court.

This is a workmen's compensation case in which there was an award in favor of the employee. The defendant held as employer, has appealed in error from this award. The employee, being dissatisfied with the amount of the award, has filed the record for writ of error.

Pittman Construction Company had a contract with the state for the paving of a highway in Blount and Monroe counties. This concern contracted with Vandergriff Truck & Crane Service, Inc., to haul the cement, lime, sand, gravel, etc., from the railway sidings to the concrete mixers and pavers used in the work and located along the right of way. Vandergriff Truck & Crane Service, Inc., hired from A. J. Wardrep three trucks, along with drivers, to assist it in the execution of this

hauling contract. The petitioner here was a truck driver in the general employ of Wardrep. While operating one of Wardrep's trucks on this work, petitioner was very seriously injured.

All the parties just named were made defendants to the petition. Wardrep was sued as the immediate employer of petitioner and a primary recovery sought against him. The Vandergriff Company was sued as an intermediate contractor and the Pittman Company as the principal contractor, under section 6866 of the Code, on the theory that the injury occurred on, in, or about the premises on which the principal contractor and intermediate contractor had undertaken to execute the work.

During the course of the trial below, after much of the proof was taken, the petitioner applied for leave to dismiss as to Wardrep and to amend his petition so as to sue the Vandergriff Company as his immediate employer. The amendment was permitted by the court below, and the suit dismissed as to Wardrep. At the conclusion of the hearing, the trial judge made an award against the Vandergriff Company and dismissed the suit as to the Pittman Company. Wardrep and the Pittman Company are accordingly not before us.

There is little or no controversy about the facts of the case. As stated above, the Vandergriff Company hired three trucks from Wardrep to use in the execution of the hauling contract which it had undertaken for the Pittman Company. Wardrep furnished the drivers for these trucks. It seems that the trucks reported to the railroad station from which the materials were to be hauled. The petitioner there received instructions from an employee of the Vandergriff Company where to obtain the

materials, and his truck was loaded. Petitioner was directed by this employee of the Vandergriff Company or by an employee of Pittman how to reach the place where the concrete was being poured. After petitioner's truck was loaded, he started out following another truck, his own truck overturned on his first trip, and he received the injuries for which he seeks compensation.

Under the contract between Wardrep and the Vandergriff Company, petitioner was to be paid by the Vandergriff Company, but his wages were to be deducted from the amount due Wardrep for the hire of the latter's trucks. Wardrep was paid on a yard mile basis for the material that his trucks hauled. Wardrep was not on the work himself, nor did he have any foreman there. It is plain from the proof that the movements of the trucks belonging to Wardrep were to be controlled by the Vandergriff Company. Wardrep's drivers were expected to keep their trucks in repair, while they were on this job.

The situation arising here is altogether similar to that presented in what are known as the teamsters' cases. Where an owner of teams and wagons contracts with a third party to furnish teams and teamsters for a stipulated price to the third party, and the owner pays the teamsters, but the third party exercises general control over them with reference to the work, but with no authority to discharge them from their general employment, the courts are not agreed as to whether the owner or the third party, during the course of such work, shall be regarded as the employer of such teamsters. The decisions are collected in Schneider's Workmen's Compensation Law (2 Ed.), vol. 1, pp. 223, et seq.

The New Jersey Court has said that a Workmen's Compensation Act is inapplicable "to any relation of

master and servant as generally understood at the common law other than that arising out of the contract between the master and the servant, whereby the servant engages to work for the master, and the master on his part engages to pay the servant for such work; in other words, that it is inapplicable to a condition of things where a servant employed by a master directly is required as part of his contract of employment to work for some other person for a compensation payable not to the servant, but to the immediate master." *Rongo* v. *Waddington & Sons, Inc., et al.*, 87 N. J. Law, 395, 94 A., 408, 409. Other cases are to like effect.

In a common-law case similar to this, where lumber was being hauled, the New York Court of Appeals took this view. The court said: "In the case under consideration Durr, the truckman, did not stand in the relation of an independent contractor to the defendant. He did not undertake to deliver lumber for the defendant. He simply furnished a team and driver to enable the defendant to do its own work. The case is the same as if the defendant had bought a team and hired a driver to aid in its business. It is not very material, so far as the defendant's liability is concerned, how it came by the instrumentalities with which it carried on its lumber business." *Hartell* v. *Simonson & Son Co.*, 218 N. Y., 345, 113 N. E., 255, 256.

In a Massachusetts case a driver in the general employ of an ice company was lent for hire by the ice company with a pair of horses and a wagon to a coal company, by which he was employed to load and deliver coal, etc., and was sometimes given a helper in loading and making deliveries. He took his orders from the office of the coal company and was told by one of the clerks there where

to deliver his loads. He received his pay from the ice company and was expected by that company to look out for the horses and the wagon in his charge. Under such facts, the coal company was held to be the employer of the driver.

The Supreme Judicial Court of Massachusetts said: ". . . It is clear that Scribner at the time of the injury was an employee of the Coal Company; he was in that company's yard, engaged in its business and doing its work; and he was under its direction and subject to its orders. Whatever may have been the relation of Scribner to the Ice Company in the care and management of the horses, at the time of his injury he was engaged in work over which that company had no control. The business was that of the Coal Company and under its direction. The transaction between the two companies amounted only to a loan of the Ice Company's servant to the Coal Company, the servant became the employee of the latter for the time being, and on the evidence he must be found to have assented to this although remaining in the general employment of the Ice Company." *Scribner's Case*, 231 Mass., 132, 120 N. E., 350, 3 A. L. R., 1178.

In this case the Massachusetts court refers to the well-established principle of the common law, which holds that an employee who is loaned to a special employer as distinguished from his general employer, and who assents to the change of employment, becomes the servant of the employer to whom he is loaned, and points out that this principle applies as well to cases arising under the Workmen's Compensation Act as to those at common law. To avoid such result the English Workmen's Compensation Act, St., 6 Edw. VII, chapter 58, section 13, pro-

vides that the general employer shall continue to be the employer, even though his servant be loaned. See, also, Schneider's Workmen's Compensation Law (2 Ed.), vol. 1, p. 213.

(1) The result reached in New York and Massachusetts in cases of this character seems to us preferable. In the case before us the Vandergriff Company did not employ Wardrep to do this hauling job or any particular part thereof. It subcontracted no part of this work to Wardrep. The Vandergriff Company merely procured additional facilities from Wardrep to perform the work itself. The Vandergriff Company, not Wardrep, was in control of the hauling, the work in which petitioner was engaged, when the latter was injured.

The views herein indicated are in harmony with previous expressions of this court with reference to loaned servants. *Sanford* v. *Keef*, 140 Tenn., 318, 204 S. W., 1154; *Powell* v. *Construction Co.*, 88 Tenn., 692, 13 S. W., 691, 17 Am. St. Rep., 925.

The case of *Hot Blast Coal Co.* v. *Williax*, 10 Tenn. App., 226, is pressed upon our consideration by counsel for the Vandergriff Company. In that case the terms of the agreement between the road contractor and the owner of the trucks are not very fully set out in the opinion. A controlling feature of the case, however, is that the owner of the trucks did not relinquish control over the trucks and their drivers but sent a foreman out to the work in charge of the trucks and drivers. The case therefore fell under the rule announced in *Chamberlain* v. *Lee*, 148 Tenn., 637, 257 S. W., 415, and *Dedman* v. *Dedman*, 155 Tenn., 241, 291 S. W., 449, in which the general employer, not having relinquished full control for the time

being, was still regarded as the employer of the loaned servant.

The definition of an independent contractor in *Powell* v. *Construction Co.*, 88 Tenn., 697, 13 S. W., 691, 692, 17 Am. St. Rep., 925, as "one who exercising an independent employment, contracts to do a piece of work according to his own methods, and without being subject to control of his employer, except as to the result of his work," excludes the idea that Wardrep could be regarded as an independent contractor in this case. It appears from all the proof herein that the petitioner was controlled and instructed as to the route he should take from the siding to the work and the route by which he should return and as to where he should get his loads by the Vandergriff Company or by the Pittman Company. Wardrep, therefore, was not in control of the methods by which the work was done. *Odom* v. *Sanford & Treadway*, 156 Tenn., 202, 299 S. W., 1045.

We are accordingly of opinion that there was no error in the ruling of the court below that the Vandergriff Company was the employer of petitioner at the time of the accident.

It is insisted that the court below erred in permitting the petitioner to dismiss as to Wardrep and amend his petition so as to seek an award from the Vandergriff Company as his immediate employer. It is said that such an amendment was inconsistent with the original petition, and that petitioner was judicially estopped from thus shifting his ground. We think the case was not one for the application of the rule of judicial estoppel. The facts were not in dispute. The original petition proceeded upon a mistaken view of the law, and contained, at most, merely a misstatement of a conclusion of law.

A judicial estoppel does not arise under such circumstances where the facts are undisputed. *Tate* v. *Tate*, 126 Tenn., 169, 148 S. W., 1042; *Houk* v. *Memphis Construction Co.*, 159 Tenn., 103, 15 S. W. (2d), 742.

The amendment was sought by petitioner during the course of the proof, as the facts more fully developed, before judgment. Only a question of law being involved, the trial judge did not abuse his discretion in allowing such an amendment.

No case for an election of remedies was presented to petitioner, as is suggested. He had only one remedy, that against the Vandergriff Company, under our view of the law.

█ The petitioner has filed the record for writ of error challenging the finding of the circuit judge as to the average weekly wage upon which the award of compensation was based.

Under the contract between the state and the principal contractor, while this work was in progress, no laborer was permitted to be employed more than 30 hours per week. It appears from testimony of petitioner that he and Wardrep had agreed upon some device whereby this 30-hour rule was to be evaded and petitioner was to draw pay as for full time. Officials of the Vandergriff Company, however, deny knowledge of any such agreement, and explicitly deny that the Vandergriff Company was a party to any such agreement. Petitioner, therefore, has failed to show that he had any such contract as he claims by which the Vandergriff Company was bound.

As the proof appears to us, the petitioner was only in the service of the Vandergriff Company as a half-time laborer. The average weekly wage of such a laborer,

upon which the award to petitioner was based, was liberally estimated by the trial judge.

The judgment below is accordingly affirmed. Petitioner will pay the costs of the writ of error, and other costs will be taxed to the Vandergriff Company.