Owen *v.* St. Louis Spring Co., Inc., *et al.*

(*Nashville,* December Term, 1939.)

Opinion filed February 17, 1940.

THOS. D. FOIL, JR., of Memphis, for plaintiff.

WINCHESTER & BEARMAN, of Memphis, for defendants.

MR. CHIEF JUSTICE GREEN delivered the opinion of the Court.

This is a suit under the Workmen's Compensation Act, Code 1932, section 6851 *et seq.*, brought by an employee against his employer and the employer's insurer. There was an award in favor of the employee below and the employer and the insurer have appealed.

The employee, Owen, was a mechanic in the general employ of St. Louis Spring Company, Inc., at its branch in Memphis. That company had qualified under the Tennessee Workmen's Compensation Law.

The St. Louis Spring Company entered into a contract with Greenville Welding Works of Greenville, South Carolina, for the sale of a machine to be used for making and repairing springs for automobiles and trucks. The machine was to be installed in the establishment of the welding works at Greenville, South Carolina, and Owen was directed by his employer to go to that place to look after this job, which he did. He arrived at Greenville on April 13, 1937, and the installation of the machine was completed in about three weeks after his arrival. Owen, however, remained at Greenville until June 25, following, demonstrating the machine or instructing local employees of the welding works about the operation of

the outfit. On June 25, Owen received an injury which resulted in the loss of one of his eyes and it is for this accident he is claiming compensation.

Owen described the accident in these words: "I was injured on the 25th day of July—the 25th day of June, about 4:45 in the evening, as I was showing one of the men working for the Greenville Welding Works in punching a hole in a piece of steel, to show him how to work the machine, and in punching this hole in the steel, the punch sheared off on the bottom and a piece of it flew up and went into my left eye, and Mr. Byers and his wife was there and carried me direct to the Greenville City Hospital there."

After the accident, Owen came back to Memphis for treatment under a specialist, and it was found necessary later to remove the left eyeball to prevent injury to the other eye.

The principal contention made in behalf of the employer is that Owen, at the time of the accident, was a loaned servant in the employ of the Greenville Welding Works and that it is incumbent upon that concern to compensate Owen for his injuries rather than St. Louis Spring Company, his general employer.

The written contract entered into between St. Louis Spring Company and Greenville Welding Works provides that "St. Louis Spring will furnish spring man to go on Greenville Welding pay roll at salary of not over 27.50 per week and traveling expenses this spring man paid to & from Greenville." The written contract does not prescribe the duties to be performed by the spring man while he is at Greenville. In this respect the written contract is ambiguous and parol proof was admitted without objections to show what the actual agreement

between the parties was. There is some conflict in the evidence on this point.

Owen testified that he was directed by his employer to remain in Greenville after the machine was installed for as long as ninety days, if necessary, for the purpose of instructing the men there how to operate the machine. Byers, the owner of Greenville Welding Works, testified that at the time of the purchase it was agreed that St. Louis Spring Company would ''send a man from the factory to install the machine and teach us how to operate and use the same. This man to be on our pay roll for a period of ninety days at $27.50 per week.''

The president and salesmanager of St. Louis Spring Company testified that the only obligation of their company was to install the machine at Greenville, South Carolina. The testimony of the salesmanager, however, is weakened by his statement on cross-examination that ''our arrangement with the man we send out is that he may come back to our employ after he has instructed the purchaser and his employees in the operation of the spring set up.''

The argument that the obligation of St. Louis Spring Company did not include demonstration of the machine and instruction to the purchaser and the purchaser's employees is further weakened by the testimony of the salesmanager that the installation of this machine could be completed in a few days. In his letter directing Owen to go to Greenville, the salesmanager told him to be prepared to remain there ninety days and Owen had been there from April 13 to June 25, several weeks after installation had been completed.

It is frequently a matter of difficulty to determine whether an employee, in a particular instance, should be regarded as a loaned employee in the service of a special

employer, or whether he should be regarded as remaining in the service of his general employer. A test running through our cases, although not always in terms noted, is indicated by the question "In whose work was the employee engaged at the time?"

As heretofore seen, there is abundant evidence to justify the finding of the trial judge that Owen was engaged in the work of St. Louis Spring Company at the time of the accident. That is, there is abundant evidence that St. Louis Spring Company sent Owen to Greenville to instruct as to the operation of the machine, as well as to install the machine. Abundant evidence that it was the obligation of St. Louis Spring Company under its contract with the purchaser to furnish a man to instruct as to the use of the machine.

In *Sanford* v. *Keef*, 140 Tenn., 368, 204 S. W., 1154, by the terms of the contract, the purchaser of the cotton gin agreed to "put up" the machine. So an employee in the general service of the seller and hurt in putting up the machine was held to be an employee loaned to the purchaser at the time. He was doing the work of the special employer. In *Wardrep* v. *Houston*, 168 Tenn., 170, 76 S. W. (2d), 328, the general employer had rented his truck and driver to a contractor engaged in highway construction. The driver was injured while hauling material for the contractor—while engaged in the contractor's work. The driver was injured and was held to be a loaned servant, in the special employ of the contractor, and the contractor was required to respond under the Workmen's Compensation Statutes.

On the other hand, in *Chamberlain* v. *Lee*, 148 Tenn., 637, 257 S. W., 415, the elevator boy, who injured the electrician working in the elevator chute, was not treated as a servant loaned to the electric contractor. The elec-

trician was injured by negligent operation of the elevator by this boy who was ordered to operate the elevator, during the repair job, as told by the electrician. But operation of the elevator was no part of the work of the electrical contractor. In *Dedman* v. *Dedman*, 155 Tenn., 241, 291 S. W., 449, the chauffeur of the owner of an automobile was not regarded as an employee loaned to occupants of the car. The owner of the car had undertaken to furnish her car and chauffeur to give relatives a trip from Columbia to Nashville. This trip was the owner's undertaking and in making this trip the chauffeur was engaged in the work of the owner and the owner was responsible for his negligence. Again in *Shelton* v. *City of Greenville*, 169 Tenn., 366, 87 S. W. (2d), 1016, employees of the Federal Emergency Relief Administration working on the streets of Greenville were held not to be employees loaned to the City of Greenville because the enterprise was a government relief project, government work.

It being the duty of St. Louis Spring Company to furnish a man to instruct in the use of this machine, it cannot be said that the man furnished and engaged in this work was in the exclusive employ or service of Greenville Welding Works. In the performance of its duty in this respect, St. Louis Spring Company could have recalled Owen and substituted another in his place. Greenville Welding Works did not have the right to select or change the instructor. Certainly the purchaser might have dispensed with the instructor, relieved the seller of the obligation to furnish an instructor, but the purchaser had no contract right to an instructor of its own choice.

When injured, Owen was fixing a spring for the purchaser's customer. Doubtless the purchaser had the

right to tell Owen what job to work on but not the right to direct Owen's methods or manner of work on the job. Owen's methods exemplified the instruction the seller contracted to furnish and these methods were subject to the seller's control. Owen therefore was not under entire control of the purchaser and was not a loaned servant. *Sanford* v. *Keef, supra*; *Chamberlain* v. *Lee, supra*.

■ Another matter requires brief notice. Although the record does not contain the original petition, only the amended petition being included in the transcript, it appears from the bill of exceptions that the original petition averred Owen was injured while installing the machine. The amended petition avers that he was injured while installing and demonstrating the machine. The amendment was made more than one year after the accident and it is urged that a new cause of action was thereby introduced which was barred by the twelve months limitation prescribed in the compensation statute. (Code section 6874.)

We do not think this amendment introduced a new cause of action. If this were a suit at common law based on the negligence of the employee an amendment to the declaration setting forth an additional ground of negligence as the cause of the same injury would not amount to the statement of a new cause of action. *Macklin* v. *Dunn*, 130 Tenn., 342, 170 S. W., 588, Ann. Cas., 1916B, 508. Accordingly we think that an amendment setting out an additional act performed in the course of employment does not amount to a statement of a new cause of action under the Workmen's Compensation Law.

We find no error in the record and the judgment below is affirmed.