FILED

July 15, 2016

TENNESSEE
WORKERS' COMPENSATION
APPEALS BOARD

Time: 10:30 A.M.



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
## WORKERS' COMPENSATION APPEALS BOARD

| | | |
|---|---|---|
| Shane Smiley | ) | Docket No. 2016-06-0104 |
| | ) | 2016-06-0105 |
| v. | ) | |
| | ) | State File No. 2435-2016 |
| Four Seasons Coach Leasing, Inc., et al. | ) | 6196-2016 |
| | ) | |
| | ) | |
| Appeal from the Court of Workers' | ) | |
| Compensation Claims | ) | |
| Joshua Davis Baker, Judge | ) | |

---

### Affirmed and Remanded – July 15, 2016

---

In this interlocutory dispute between two potential employers, the claimant was a commercial driver who alleged he was injured while operating a touring coach during a nineteen-day concert tour. While driving the coach, he experienced pain and symptoms in his shoulder, left hip, and lower back, which he attributed to a defective and/or poorly-maintained seat and rough road conditions. The company that owned the coach denied that the claimant was an employee, denied that he sustained a compensable injury, and argued that, even if he suffered a compensable injury, the artist's tour management company was the responsible employer pursuant to the loaned servant doctrine. The tour management company also denied the claim, arguing the claimant was not a loaned servant and that he was an independent contractor. Following an expedited hearing, the trial court determined that the leasing company was the responsible employer and ordered it to provide additional medical benefits; however, the trial court denied the employee's claim for temporary disability benefits. The leasing company appealed. Having carefully reviewed the record, we affirm the trial court's determinations and remand the case for further proceedings.

Judge Timothy W. Conner delivered the opinion of the Appeals Board, in which Judge Marshall L. Davidson, III, and Judge David F. Hensley joined.

Cole B. Stinson, Lansing, Michigan, for the appellant, Four Seasons Coach Leasing, Inc.

1

Stacie D. Miller, Knoxville, Tennessee, for the appellee, Live Soul Touring

Shane Smiley, Nashville, Tennessee, claimant-appellee, pro se

## Factual and Procedural Background

Shane Smiley ("Claimant") is a forty-nine-year-old resident of Davidson County, Tennessee. In 2012, he began a working relationship with Four Seasons Coach Leasing, Inc. ("Four Seasons"), which owned and leased several touring coaches. Claimant testified that he had significant prior experience driving similar vehicles for various tours. Once Claimant qualified to be on Four Seasons' approved driver list, he was periodically offered assignments to operate touring coaches for various artists. Most tours involved multiple coaches and, on occasion, Four Seasons assigned Claimant to be the "lead driver," acting as liaison between the artist, the artist's tour management company, and the other coach drivers.[1]

Claimant testified that although he could offer his driving services to other companies, the assignments offered by Four Seasons generally kept him busy enough that he did not accept many assignments from other companies. Once he committed to a Four Seasons tour, he declined offers from other tour companies. He further testified that for most tours, Four Seasons paid him as an employee, evidenced by the withholding of applicable taxes from his paychecks.[2] Moreover, Claimant was informed by Four Seasons personnel that the company provided workers' compensation coverage for its drivers.

However, on this particular tour, the artist's tour management company, Live Soul Touring ("Live Soul"), chose to pay the coach drivers directly. Although there was an initial dispute regarding whether the tour management company would withhold applicable taxes from the drivers' paychecks, as requested by the drivers, Claimant acknowledged that Live Soul paid the drivers for this tour as "1099 contractors."

Claimant testified that there was a contract between Four Seasons and Live Soul detailing the dates and duration of the tour, equipment, personnel needed to operate the coaches, and Four Seasons' continuing responsibility for the operating expenses for the coaches during the tour. Claimant further explained, however, that Live Soul personnel directed day-to-day details during the tour. Claimant would attend regular planning

---

[1] According to Claimant's testimony, the touring coaches generally were divided into three categories: artist, band, and crew. The artist's coach had a different interior configuration from other coaches, and the driver of the artist's coach typically served as "lead driver." Tours generally used between three and twenty coaches.

[2] Four Seasons charged a fee to an artist or tour management company to handle the payroll for the coach drivers.

2

meetings with Live Soul personnel to discuss when and where to have the coaches available for the artist and tour staff. When traveling between venues, Live Soul personnel could direct Claimant's driving activities by suggesting routes and speed of the vehicles. Only when the instructions violated state or federal law or compromised the safety of those on board would Claimant not follow such directions.

Claimant also testified that the coach remained his responsibility during the tour. Pursuant to instructions from Four Seasons, he was required to regularly clean both the interior and exterior of the coach, remove trash periodically, check the engine, and arrange maintenance or service on his days off as needed. Live Soul could not terminate his services or replace him with a driver of their choice. Four Seasons directed his overall conduct with respect to the operation of the coach. In the event of sickness or other urgent situation, he was responsible for communicating with Four Seasons if a replacement driver was needed. In general, however, he was committed "24/7" to the vehicle and the artist for the duration of the tour.

At the end of any given tour, Claimant would create a "punch list" for the maintenance department at Four Seasons and would prioritize items requiring repair prior to the coach being put back into service. Claimant had previously operated the coach in question and informed the maintenance department that "there was a problem with the seat" and that the seat was "causing me discomfort." However, because of time deadlines, the seat was not repaired or replaced prior to the start of the next tour.

On November 28, 2015, Claimant drove the coach from Nashville to Philadelphia in preparation for the beginning of the tour. Four Seasons had directed him to arrive early so that the drivers would be "rested up and ready for travel the morning of November 30th from Philadelphia to Boston." Claimant explained that "on page 2 of my packet is a pickup sheet from Four Seasons Coach Leasing that designates where I'm supposed to go, where I'm supposed to pick up, it gives the number of tour days . . . ."

During the course of the nineteen-day tour, Claimant experienced increasing symptoms in his hip, back, and shoulder while operating the coach, which he attributed to the faulty seat and road conditions. In particular, while driving from Boston to Washington, D.C., he operated the coach through severe inclement weather. Although Claimant deemed it safe enough to travel, he testified that driving through "crosswinds, rain, freezing rain, a lot of debris, . . . [and] black ice" caused tension and an acute worsening of his symptoms. Claimant explained that after arriving in Washington, he "felt a sharp pain in my shoulder and in my lower back and the left hip." He attempted to relieve his symptoms with massages, hot showers, and rest, but these provided only limited relief.

Although Claimant was able to complete the tour, he informed Four Seasons personnel on December 15, 2015, about the continuing problems with the seat and his

3

symptoms. He told them he would "see what I can do over the course of the holiday break to get myself mended up, and we'll see where I am the first of the year." After his symptoms failed to improve, he informed Four Seasons personnel after the first of the year that he needed medical attention. Within one day, he was provided a panel of physicians, made a selection, and received an appointment for the following day.

Claimant was evaluated by Dr. Adhi Jayaraman on January 14, 2016. He informed Dr. Jayaraman that the seat in his coach had caused lower back pain, tightness in his neck and shoulders, and inflammation in his right shoulder. X-rays of the cervical spine revealed moderate degenerative changes and "multilevel foraminal stenosis." X-rays of the lumbar spine revealed bilateral spondylolysis and other degenerative changes. Dr. Jayaraman prescribed physical therapy and MRIs of the cervical and lumbosacral spine. However, these recommendations were not authorized because Four Seasons' insurer denied the claim soon thereafter.

After Claimant gave a recorded statement to the claims representative for Four Seasons, the insurer denied the claim, asserting Claimant was not an employee of Four Seasons at the time of the alleged injury; he did not suffer an injury arising primarily out of and in the course and scope of employment with Four Seasons; and, even if he sustained a work-related injury, his claim was the responsibility of Live Soul pursuant to the loaned servant doctrine. Similarly, Live Soul's insurer denied the claim, asserting he was not an employee or loaned servant of Live Soul at the time of the alleged injury; he was an independent contractor; and he did not sustain a compensable injury.

Following an expedited hearing, the trial court determined that Four Seasons was Claimant's employer and issued an order for medical benefits, compelling it to authorize the additional medical treatment and tests prescribed by Dr. Jayaraman. However, the trial court denied the claim for temporary disability benefits. Four Seasons appealed.

### Standard of Review

The standard of review to be applied by this Board in reviewing a trial court's decision is statutorily mandated and limited in scope. Specifically, "[t]here shall be a presumption that the findings and conclusions of the workers' compensation judge are correct, unless the preponderance of the evidence is otherwise." Tenn. Code Ann. § 50-6-239(c)(7) (2015). The trial court's decision must be upheld unless the rights of a party "have been prejudiced because findings, inferences, conclusions, or decisions of a workers' compensation judge:

(A)   Violate constitutional or statutory provisions;
(B)   Exceed the statutory authority of the workers' compensation judge;
(C)   Do not comply with lawful procedure;

4

(D)   Are arbitrary, capricious, characterized by abuse of discretion, or clearly an unwarranted exercise of discretion;

(E)   Are not supported by evidence that is both substantial and material in the light of the entire record."

Tenn. Code Ann. § 50-6-217(a)(3) (2015). Like other courts applying the standards embodied in section 50-6-217(a)(3), we will not disturb the decision of the trial court absent the limited circumstances identified in the statute.

## Analysis

Four Seasons raises several issues on appeal, including: (1) whether Claimant is an independent contractor rather than an employee; (2) whether Live Soul was a "special employer" pursuant to the loaned servant doctrine; and (3) whether the employee came forward with sufficient evidence that he suffered a compensable injury.[3]

### *Employee versus Independent Contractor*

The Tennessee Workers' Compensation Act requires that "[i]n a work relationship, in order to determine whether an individual is an 'employee,' or whether an individual is a 'subcontractor' or an 'independent contractor,' the following factors shall be considered:

*(a)*   The right to control the conduct of the work;
*(b)*   The right of termination;
*(c)*   The method of payment;
*(d)*   The freedom to select and hire helpers;
*(e)*   The furnishing of tools and equipment;
*(f)*   Self-scheduling of working hours; and
*(g)*   The freedom to offer services to other entities."

Tenn. Code Ann. § 50-6-102(12)(D)(i) (2015). These factors are not absolutes that preclude examination of each work relationship as a whole and are no more than a means of analysis. *Masiers v. Arrow Transfer & Storage Co.*, 639 S.W.2d 654, 656 (Tenn. 1982). While no single factor is determinative, the Tennessee Supreme Court "has repeatedly emphasized the importance of the right to control, the relevant inquiry being whether the right existed, not whether it was exercised." *Galloway v. Memphis Drum Serv.*, 822 S.W.2d 584, 586 (Tenn. 1991).

---

[3] Four Seasons also listed certain evidentiary issues in its notice of appeal, but these were not identified as issues or discussed in its brief on appeal and, therefore, we assume Four Seasons has abandoned them for purposes of this appeal. *See* Appeals Board Prac. & Proc. § 5.1 ("All briefs . . . pertaining to the appeal of an interlocutory order shall include . . . a statement of the issue(s) presented for review on appeal" and "an argument, citing appropriate statutes, case law, or other authority.").

5

Moreover, determining whether an individual is characterized as an employee or an independent contractor for workers' compensation purposes requires a specialized factual analysis. *Masiers*, 639 S.W.2d at 656-57. No single aspect of a work relationship is conclusive in making this determination, and in deciding whether a worker is an employee or independent contractor, "the trier of fact must examine all relevant factors and circumstances" of the relationship. *Boruff v. CNA Ins. Co.*, 795 S.W.2d 125, 127 (Tenn. 1990). The fact that a company did not deduct social security or income taxes is not a controlling factor in deciding whether an employer-employee relationship existed. *Carter v. Sparta Elec. Sys.*, 690 S.W.2d 218, 221 (Tenn. 1985).

In the present case, the trial court determined that Claimant was an employee of Four Seasons. In so holding, the trial court considered Claimant's primary job functions, which included driving the coach, cleaning the coach, maintaining the coach, and arranging service and maintenance of the coach during the course of the tour as needed. Each of these functions was directed by Four Seasons and was not under the control of Live Soul or Claimant. Claimant's testimony on this issue was corroborated by the lease agreement between Four Seasons and Live Soul, which stipulated that Four Seasons would "bear all expenses to operate and maintain LEASED VEHICLE, including, but not limited to: fuel, oil, lubricants, cleaning agents, cleaning material, toilet and bathroom chemicals and disinfectants and other fluid lubricants and cleaning solvents necessary to properly maintain the LEASED VEHICLE." The lease agreement also required Four Seasons to "clean all blankets, linens, and pillows at regular intervals," further supporting Claimant's testimony that he received detailed instructions from Four Seasons regarding how the coach was to be maintained during the course of the tour.

Furthermore, although Claimant received and accepted some day-to-day directions from Live Soul personnel, any such directives were subordinate to the terms of the lease agreement, applicable state and federal laws, and Claimant's overriding responsibility to ensure the safety of those on board the coach. Live Soul had no right under the terms of the lease agreement to replace the driver or direct him to engage in any activity outside the terms of the lease agreement. Four Seasons, rather than Live Soul, was ultimately responsible for the operation and maintenance of the coach during the term of the lease agreement, and Claimant acted as a representative of Four Seasons during the tour.

Moreover, there is no dispute that Four Seasons supplied the equipment necessary to fulfill the terms of the lease agreement. Four Seasons directed Claimant concerning the dates and duration of the tour and where to begin and end the tour in accordance with the terms of the lease agreement with its client. Claimant's unrefuted testimony indicated that any substantial change to the itinerary of the tour had to be reviewed and approved by Four Seasons. Live Soul personnel could not direct Claimant to proceed to a different city or venue without approval from Four Seasons. It is further undisputed that Claimant had no right to hire helpers in fulfilling the terms of the lease agreement. Moreover, he

6

could not schedule his own hours given that he was subject to whatever work hours were required of him pursuant to the terms of the lease agreement.

Finally, with respect to the method of payment, we acknowledge that Live Soul's decision to pay the drivers directly as "1099 contractors" weighs against Claimant's status as an employee of Four Seasons. Nevertheless, this factor, standing alone, is insufficient to overcome the other factors that support finding an employment relationship between Claimant and Four Seasons. Based on our review of the evidence submitted during the expedited hearing, we find that the evidence preponderates in favor of the trial court's determination that Claimant was an employee rather than an independent contractor and that Four Seasons was the employer at all relevant times.

*Loaned Servant Doctrine*

The Tennessee Supreme Court has examined the loaned servant doctrine on several occasions. In *Owen v. St. Louis Spring Co.*, 136 S.W.2d 498 (Tenn. 1939), St. Louis Spring Company sent one of its workers for an extended period of time to Greenville Welding Works in South Carolina to install a machine and train others on how to operate it. During his term of service at Greenville Welding Works, the employee was paid directly by that company, the purchaser of the machine. *Id.* at 545. The employee sustained an eye injury in the course of his work and the issue on appeal was which company owed workers' compensation benefits. *Id.* In discussing the loaned servant doctrine, the Supreme Court explained:

> It is frequently a matter of difficulty to determine whether an employee, in a particular instance, should be regarded as a loaned employee in the service of a special employer, or whether he should be regarded as remaining in the service of his general employer. A test running through our cases, although not always in terms noted, is indicated by the question "In whose work was the employee engaged at the time?" As heretofore seen, there is abundant evidence to justify the finding of the trial judge that Owen was engaged in the work of St. Louis Spring Company at the time of the accident. That is, there is abundant evidence that St. Louis Spring Company sent Owen to Greenville to instruct as to the operation of the machine, as well as to install the machine. Abundant evidence [indicated] that it was the obligation of St. Louis Spring Company under its contract with the purchaser to furnish a man to instruct as to the use of the machine.
>
> * * *
>
> It being the duty of St. Louis Spring Company to furnish a man to instruct in the use of this machine, it cannot be said that the man furnished and engaged in this work was in the exclusive employ or service of Greenville

7

Welding Works. In the performance of its duty in this respect, St. Louis Spring Company could have recalled Owen and substituted another in his place. Greenville Welding Works did not have the right to select or change the instructor. Certainly the purchaser might have dispensed with the instructor, relieved the seller of the obligation to furnish an instructor, but the purchaser had no contract right to an instructor of its own choice.

*Id.* at 546-47. Thus, despite the fact that Greenville Welding Works was paying the employee at the time of his injury, the Supreme Court held that he remained primarily an employee of his general employer, which was responsible for the workers' compensation benefits. *Id.* at 547.

In another case, *Federal Ins. Co. v. Pennsylvania Nat'l Mut. Cas. Co.*, No. M1999-01917-WC-R3-CV, 2000 Tenn. LEXIS 449 (Tenn. Workers' Comp. Panel Aug. 17, 2000), the Tennessee Supreme Court's Special Workers' Compensation Appeals Panel discussed the loaned servant doctrine in the context of the construction industry. The employee in *Federal Ins. Co.* was electrocuted while working on a job for one construction company, although he was technically employed by a different construction company. *Id.* at *2. In determining whether the employee was a loaned servant for purposes of the claim, the Appeals Panel examined a three-pronged test first adopted by the Tennessee Supreme Court in *Winchester v. Seay*, 409 S.W.2d 378 (Tenn. 1966). "When a general employer loans an employee to a special employer, the special employer becomes liable for workmen's compensation only if (a) the employee has made a contract of hire, express or implied, with the special employer; (b) the work being done is essentially that of the special employer; and (c) the special employer has the right to control the details of the work." *Id.* at *6. The critical issue in the case was whether there was an implied contract of hire between the special employer and the injured worker. *Id.* In finding there was an implied contract of hire, the Panel commented that "[t]he test for whether or not one is a loaned servant focuses less on who was to pay the employee, but instead focuses more on for whom the work was being done." *Id.* at *7.

In the present case, it is undisputed that Live Soul was contractually obligated to pay the coach drivers directly. It is also undisputed that Claimant followed some day-to-day instructions from Live Soul personnel regarding the operation of the coach. However, Claimant's primary job responsibilities, including care and maintenance of the coach, daily cleaning activities, and the safe transport of Four Seasons' clients from one venue to another, was essentially the work of Four Seasons, not Live Soul. It is Four Seasons that is in the business of providing and operating touring coaches, not Live Soul. Thus, the preponderance of the evidence supports the trial court's determination that Claimant was not a loaned servant for purposes of workers' compensation liability.

Finally, Four Seasons asserts that Claimant failed to come forward with sufficient evidence that he suffered a compensable injury "caused by a specific incident, or set of incidents, . . . identifiable by time and place of occurrence," as defined in the statute. *See* Tenn. Code Ann. § 50-6-102(14) (2015). As we have discussed in numerous prior cases, the burden of proof at an expedited hearing is different than the burden of proof at a compensation hearing. *E.g.*, *McCord v. Advantage Human Resourcing*, No. 2014-06-0063, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *9 (Tenn. Workers' Comp. App. Bd. Mar. 27, 2015). Specifically, at an expedited hearing, an employee need not prove each and every element of his or her claim by a preponderance of the evidence in order to obtain temporary disability benefits or medical benefits. *Id.* Instead, an employee has the burden to come forward with sufficient evidence from which the trial court can determine that the employee is likely to prevail at a hearing on the merits consistent with Tennessee Code Annotated section 50-6-239(d)(1). *Id.* Thus, while an injured worker retains the burden of proof at all stages of a workers' compensation claim, a trial court can grant relief at an expedited hearing if the court is satisfied that an employee has met the burden of showing that he or she is likely to prevail at a hearing on the merits. Tenn. Code Ann. § 50-6-239(d)(1) (2015).

However, "[t]his lesser evidentiary standard . . . does not relieve an employee of the burden of producing evidence of an injury by accident that arose primarily out of and in the course and scope of employment at an expedited hearing, but allows some relief to be granted if that evidence does not rise to the level of a 'preponderance of the evidence.'" *Buchanan v. Carlex Glass Co.*, No. 2015-01-0012, 2015 TN Wrk. Comp. App. Bd. LEXIS 39, at * 6 (Tenn. Workers' Comp. App. Bd. Sept. 29, 2015). It is our responsibility to conduct an in-depth examination of the trial court's factual findings and conclusions, *see Wilhelm v. Krogers*, 235 S.W.3d 122, 126 (Tenn. 2007), within the mandate set out in Tennessee Code Annotated sections 50-6-217(a)(3) and 50-6-239(c)(7) (2015). Section 50-6-239(c)(7) provides a presumption "that the findings and conclusions of the workers' compensation judge are correct, unless the preponderance of the evidence is otherwise." Furthermore, when the trial court has seen and heard the witnesses, considerable deference must be afforded the trial court's factual findings. *Tryon v. Saturn Corp.*, 254 S.W.3d 321, 327 (Tenn. 2008).

In the present case, Four Seasons contends that Claimant did not offer any evidence of a sudden, acute incident resulting in the immediate onset of pain or other symptoms. Instead, Four Seasons argues that Claimant described only a "gradually occurring injury" that does not, in Four Seasons' opinion, qualify as a compensable "injury by accident." Relying on the common definition of the word "specific" as "special or particular," Four Seasons argues that Claimant failed to meet his burden of proof at the expedited hearing in proving a "specific incident."

Four Seasons' position is unduly restrictive and fails to take into account the legislature's use of the phrase "set of incidents" in section 50-6-102(14)(A). In amending the definition of "injury," the legislature made clear that a "set of incidents" that is "identifiable by time and place of occurrence" can constitute an "injury by accident" as that phrase is used in Tennessee Code Annotated section 50-6-103 (2015) ("Every employer and employee subject to this chapter, shall, respectively, pay and accept compensation for personal injury . . . by accident arising primarily out of and in the course and scope of employment . . . ."). A "set of incidents," by definition, cannot occur instantaneously, but must occur over some period of time. Thus, to establish a compensable injury by accident, an employee need not prove a single, sudden event accompanied by the immediate onset of pain or other symptoms, but can meet his or her burden at an expedited hearing by presenting evidence from which the trial court can determine he or she is likely to prove a compensable set of incidents over an identifiable period of time.

Here, Claimant described specific symptoms that developed and increased in intensity over an identifiable period of time while operating the coach. Moreover, he offered detailed testimony concerning a specific portion of the journey from Boston to Washington D.C. during inclement weather that resulted in an acute worsening of his symptoms. Under the circumstances, such testimony supports the trial court's determination that Claimant came forward with sufficient evidence that he would likely prevail on this issue at a hearing on the merits. Thus, we find no error.

### Conclusion

For the foregoing reasons, we hold that the evidence does not preponderate against the trial court's decision at this interlocutory stage of the case. Nor does the trial court's decision violate any of the standards set forth in Tennessee Code Annotated section 50-6-217(a)(3). The trial court's decision is affirmed and the case is remanded for any further proceedings that may be necessary.

Timothy W. Conner, Judge
Workers' Compensation Appeals Board

10

**FILED**

**July 15, 2016**

**TENNESSEE
WORKERS' COMPENSATION
APPEALS BOARD**

**Time: 10:30 A.M.**



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
## WORKERS' COMPENSATION APPEALS BOARD

| | | |
|---|---|---|
| Shane Smiley | ) | Docket No.    2016-06-0104 |
| | ) | 2016-06-0105 |
| v. | ) | |
| | ) | State File No.    2435-2016 |
| Four Seasons Coach Leasing, Inc., et al. | ) | 6196-2016 |
| | ) | |
| | ) | |
| Appeal from the Court of Workers' | ) | |
| Compensation Claims | ) | |
| Joshua Davis Baker, Judge | ) | |

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the Appeals Board's decision in the referenced case was sent to the following recipients by the following methods of service on this the 15th day of July, 2016.

| Name | Certified Mail | First Class Mail | Via Fax | Fax Number | Via Email | Email Address |
|---|---|---|---|---|---|---|
| **Shane Smiley** | | | | | X | shane.alan.smiley@gmail.com |
| **Stacie Miller** | | | | | X | smiller@adhknox.com |
| **Cole Stinson** | | | | | X | cole.stinson@accidentfund.com |
| **Joshua Davis Baker, Judge** | | | | | X | Via Electronic Mail |
| **Kenneth M. Switzer, Chief Judge** | | | | | X | Via Electronic Mail |
| **Penny Shrum, Clerk, Court of Workers' Compensation Claims** | | | | | X | Penny.Patterson-Shrum@tn.gov |

Matthew Salyer

Matthew Salyer
Clerk, Workers' Compensation Appeals Board
220 French Landing Dr., Ste. 1-B
Nashville, TN 37243
Telephone: 615-253-1606
Electronic Mail: Matthew.Salyer@tn.gov